**Fairfax**

MARJORIE M. TIFFANY

v.

CURRELL HUNTON TIFFANY

No. 0003-84

Argued March 13, 1985

Decided August 6, 1985

COUNSEL

Thomas V. Monahan (Hall, Monahan, Engle, Mahan & Mitchell, on brief), for appellant.

Burke F. McCahill (Hanes, Sevila, Saunders & McCahill, on brief), for appellee.

OPINION

**BENTON, J.**—The appellant, Marjorie M. Tiffany, now Marjorie M. Tiffany Yoars (Yoars), sought an order to show cause why the appellee, Currell Hunton Tiffany (Tiffany), should not be held in contempt for failing to pay the college education support for their older son, Hunton Shackleford Tiffany (Shack), which Yoars alleges is due in accordance with a property settlement agreement. The trial judge dismissed the rule to show cause, holding that the agreement lacked sufficient definiteness to warrant a finding of contempt. Upon the motion of both parties, the trial court proceeded to interpret the property settlement agreement after hearing evidence. The court determined that Tiffany had acted within his rights under the property settlement agreement when he terminated support payments for Shack upon Shack's eighteenth birthday and when he refused to contribute to Shack's college expenses.

The issues on appeal are: (1) whether the property settlement agreement requires the parties to agree mutually on the choice of a college for a child in order for Tiffany's support obligation to arise; and (2) whether the trial court was correct in finding that the child support payments were properly terminated pursuant to the property settlement agreement when Shack attained the age of eighteen.

Tiffany and Yoars were divorced in 1980 by decree of the Circuit Court of Fauquier County which confirmed, ratified, ap-

proved and incorporated by reference the property settlement agreement entered into by the parties. Yoars was given custody of the two sons born of the marriage. The property settlement agreement contains the following provisions:

10. *Child Support.* The Husband agrees to pay unto the Wife as and for his contribution towards the support and maintenance of the infant children of the parties hereto the sum of Eight Hundred Dollars ($800.00) per month to be adjusted as hereinafter set forth until such time as each of the children obtain the age of eighteen (18) years, die, marry, enter the Armed Forces of the United States of America, are no longer in the care and custody of the Wife, or otherwise become emancipated, whichever event first occurs, and upon the happening of any such event to one child, the amount of child support paid to the Wife shall be reduced to sixty percent (60%) of the amount paid unto the Wife in the month immediately preceding the happening of the said event, and upon the happening of any such event to the other child, the support payments shall forever cease, except as hereinafter set forth.

\* \* \*

14. *College Education Expenses.* The Husband agrees that it is his desire to make some contribution to the support of the children after they have finished their high school education and while they are in college on a full-time basis, and he further wishes to make a substantial contribution to their college education with the specific understanding that the Wife covenants and agrees that this is a contractual right and she shall not have the right to seek any increase in the payments under this paragraph. The Husband agrees that the payments hereinbefore set forth in Paragraphs numbered 10 and 11 shall continue until each of the said children has completed four (4) years of college. The Husband shall only have such obligation hereunder to each of the said children so long as the said child enters college within a reasonable period of time after the child should have completed his high school graduation and only so long as the child continued college on a full-time basis. The Husband shall have no obligation hereunder after a child attains the age of twenty-three (23) years. Provided further, however, that as an express condition of the Husband's obligation, the Husband shall be enti-

tled to participate in the decision making process as to the college to be attended by the said children.

Upon the happening of any one of the following events, the amount of payments by the Husband to the Wife shall be reduced to an amount equal to fifty percent (50%) of the amount paid by the Husband to the Wife in the month immediately preceding the happening of the said event: Obtaining the age of twenty-three (23) years, completing college education, dying, marrying, or no longer being enrolled in and attending a school mutually acceptable to the Husband and Wife on a full-time basis.

As early as September of 1983, the beginning of Shack's last year of high school, the college selection process began. Although Tiffany contends that he encountered difficulties in obtaining information from Yoars and Shack, the record shows that all three parties did communicate regarding the selection of a college. Yoars, then living in Connecticut, communicated by letter and telephone with Tiffany, who lived in Fauquier County, Virginia. She apprised him of a list of twelve colleges being considered and asked for his suggestions. Tiffany discussed the selection of a college with Yoars on other occasions and with Shack in two face-to-face conversations. During the course of this selection process, Tiffany clearly expressed his preferences regarding Shack's college education. Specifically, Tiffany made known his desire that Shack attend a college in the South (preferably within 150 miles of Warrenton, Virginia) with an honor code and a predominantly Protestant student body.

On October 19, 1983, Shack attained the age of eighteen years. Shortly thereafter Tiffany reduced the amount of child support to sixty percent of the amount paid to Yoars in the month immediately preceding Shack's eighteenth birthday.

Tiffany took Shack to visit three colleges in November, 1983. Shack did not apply to Roanoke College, Hampden-Sydney College, or Randolph Macon College as suggested by Tiffany. He did, however, apply to James Madison University, one of the schools which he visited with Tiffany, but he was not accepted.

In April of 1984, Shack was admitted to the University of Hartford, where he enrolled in the Fall of the same year. Tiffany objected to his son's decision to attend the University of Hartford and refused to pay college education support. As a result of this refusal, Yoars instituted the present litigation.

The testimony and evidence received by the trial court primarily concern the interpretation by the parties of Paragraph 14, the actions taken by Tiffany, Yoars and Shack to select a college, the extent and nature of communications among the parties, and the reasons for Tiffany's refusal to pay college education support for Shack.

The question, and the crux of this case, is whether Tiffany's promise, under Paragraph 14 of the property settlement agreement, to provide support for his children's college education is conditioned upon his approval of the college initially selected. We believe it is not.

■ Property settlement agreements are contracts; therefore, we must apply the same rules of interpretation applicable to contracts generally. *See generally Wells* v. *Weston,* ___ Va. ___, 326 S.E.2d 672 (1985); *Paul* v. *Paul,* 214 Va. 651, 203 S.E.2d 123 (1974); *White* v. *Graham,* ___ N.C. App. ___, 325 S.E.2d 497 (1985); *Krickhan* v. *Krickhan,* 34 N.C. App. 363, 238 S.E.2d 184 (1977). We state at the outset our belief that the property settlement agreement is unambiguous; thus, its meaning and effect are questions of law to be determined by the court. On review we are not bound by the trial court's construction of the contract provisions here in issue. *Wilson* v. *Holyfield,* 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).

■ In construing contracts, ordinary words are to be given their ordinary meaning. The Supreme Court of Virginia restated the applicable principles in *Berry* v. *Klinger,* 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983):

We adhere to the "plain meaning" rule in Virginia: "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . . This is so because the writing is the repository of the final agreement of the parties." (Citations omitted).

The court must give effect to all of the language of a contract if its parts can be read together without conflict. Where possible, meaning must be given to every clause. The contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties. However inartfully it may have been drawn, the court cannot make a new contract for the parties, but must construe its language as written. (Citation omitted).

The intention of Tiffany to provide college education expenses for his sons is firmly and unequivocally stated in Section 14 and bears emphasis:

The Husband agrees that it is his desire to make some contribution to the support of the children after they have finished their high school education and while they are in college on a full-time basis, and he further wishes to make a substantial contribution to their college education . . . .[1]

As his contribution to the college education of each son, Tiffany promises "that the payments hereinbefore set forth in Paragraphs numbered 10 and 11 shall continue until each of the said children has completed four (4) years of college."[2]

Tiffany's promise to pay support for a child in college is not without limitation. Indeed, the first subparagraph of Paragraph 14 sets out a number of conditions to his support obligation. There it is provided that Tiffany shall only have an obligation to each child

*so long as* the said child enters college within a reasonable period of time after the child should have completed his high school graduation and only *so long as* the child continued college on a full time basis. The Husband *shall have no obligation* hereunder after a child attains the age of twenty-three (23) years. Provided further, however, that *as an express*

---

[1] The amount of college education expense payment required of Tiffany is fixed by the property settlement agreement. The amount neither depends upon nor varies with the cost of the college selected.

[2] Paragraph 11 provides for annual adjustment of the support payments in accordance with Tiffany's net spendable income. The adjustment provision is not at issue in this case.

*condition* of the Husband's obligation, the Husband shall be entitled to participate in the decision making process as to the college to be attended by the said children. (emphasis added).

The record discloses that the first three conditions have been satisfied. It is undisputed that Shack entered college within a reasonable period of time after graduating from high school. There is no indication in the record that he was not pursuing his studies at the University of Hartford on a full-time basis. Finally, Shack was not yet twenty-three years of age. The condition at issue here concerns Tiffany's participation in the decision-making process as to the college to be attended by Shack.

The trial court found that the last sentence of Paragraph 14 contemplates that the parties would reach a mutual agreement as to the school to be attended by Shack as a result of Tiffany's participation in the decision-making process. While we acknowledge that the parties may have expected that a mutual agreement would result from their joint participation in the college selection process, they did not express this expectation as a condition precedent to Tiffany's obligation to pay college support. The parties simply did not provide for what would happen if the son's initial selection of a college was unacceptable to either of the parents.

As set forth above, one of the express conditions to Tiffany's obligation to pay college support is his participation in the decision-making process as to the school to be attended. The plain language of the agreement does not require that Yoars or the son select a college acceptable to Tiffany. The agreement does not confer upon Tiffany the right to reject a school — what the parties characterize as a veto. *See Moore* v. *Moore,* 235 Ga. 512, 220 S.E.2d 133 (1975) (college "selected by mutual agreement between the plaintiff, defendant and the child involved"); *Van Nortwick* v. *Van Nortwick,* 52 Ill. App. 2d 229, 201 N.E.2d 857 (1964) (selection of school "by joint agreement of the Husband and Wife"). We are not at liberty to find a veto power where the language used by the parties does not confer one.

We further note that the final subparagraph of Paragraph 14 quite clearly presupposes that Tiffany has commenced the payment of college education expenses on behalf of his son, for it

states: "Upon the happening of any one of the following events, the amount of payments by the Husband to the Wife shall be *reduced* to an amount equal to fifty percent (50%) of the amount paid by the Husband to the Wife in the month immediately preceding the happening of the said event[.]" (emphasis added). What then follows are alternative statements of events, not certain to occur, one of which must occur if Tiffany is to be permitted to reduce the college support payments once the duty to commence payment comes into being. None of the specified events has occurred.

The only language of the contract which in any way could be said to vest Tiffany with veto power is found in the last sentence of Paragraph 14. There, it is provided that Tiffany may terminate his support upon a child "no longer being enrolled in and attending a school mutually acceptable to the husband and wife." In order to be no longer "enrolled in and attending a college mutually acceptable" the son would had to have once been so enrolled. It is undisputed that Shack is not now and never has been enrolled in a school mutually acceptable to both parents. Accordingly, by its own terms, this condition is inapplicable where, as here, the son selects a college that is not acceptable to both parents.

The parties easily could have provided that the support obligation would not arise where a child did not enroll in and attend a school mutually acceptable to Tiffany and Yoars. They did not do so. Instead, the parties provided for the reduction upon the happening of any one of five events, none of which anticipates Shack's decision to enroll in and attend a school that was unacceptable to one of the parents. Since Tiffany did not include a veto power over the selection of a college in his list of conditions, he may not now demand that right in contravention of the plain meaning of the contract. Whatever his intentions may have been and no matter how reasonable those intentions may appear now, the contract language demonstrates that he bargained only for the right to *participate* in the decision-making process. He did not bargain for a veto and we are not at liberty to provide him with one now through creative interpretation of an unambiguous contract. *See Berry* v. *Klinger, supra,* at 208, 300 S.E.2d at 796; *Wilson* v. *Holyfield, supra,* at 187-88, 313 S.E.2d at 398.[3]

---

[3] In reaching this conclusion we are guided in part by the principle that conditions subsequent, when relied upon to work a forfeiture, are to be strictly construed and not

Tiffany's right to participate is, therefore, not enhanced or given a special meaning in Paragraph 14. The plain and ordinary meaning of "participate" is "to take part in something usually in common with others" or "to have a part or share in something." Webster's Third New International Dictionary 1646 (1968).

The record shows that Tiffany had ample opportunity to participate and did participate in the decision-making process as to the college to be attended by Shack. This being all that was bargained for, it follows that the trial court erred in concluding that Paragraph 14 of the property settlement agreement allows Tiffany to condition his support obligation on his approval of the college selected by Shack.

The issue concerning the suspension of support payments between Shack's eighteenth birthday and enrollment in college may be disposed of briefly.

Section 10, which contains the basic agreement between the parties for the payment of child support, describes six specific events which if they occur will discharge Tiffany's duty to pay the full amount of child support. Upon the first occurrence of any one of the following events to either child, Tiffany is permitted to reduce the child support payments by forty percent:

— "obtain the age of eighteen (18) years,"
— "die,"
— "marry,"
— "enter the Armed Forces of the United States,"
— "no longer in the care or custody of the Wife,"
— "otherwise become emancipated."

Thus, the property settlement agreement by its express terms permits Tiffany to reduce the support payments to sixty percent of the amount paid to Yoars in the month immediately preceding the date that Shack attained the age of eighteen years. Although this construction has the effect of reducing the amount of child support while Shack is in high school and still in the care and custody of Yoars, the plain and clear language of the property settlement

aided by implication. *Roadcap v. County School Board,* 194 Va. 201, 205, 72 S.E.2d 250, 253, (1952); *State-Planters' Bank & Trust Company v. First National Bank,* 76 F.2d 527, 530 (4th Cir.), *cert. denied,* 295 U.S. 764 (1935).

agreement requires this conclusion. In viewing the property settlement agreement as a single document, we cannot say that this construction is inconsistent with the overall scheme or unintended.

Accordingly, the order of the trial court is reversed in part, affirmed in part, and remanded for proceedings consistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Baker, C.J.,* and Kennan, J., concurred.

---

* Chief Judge Baker presided at the oral argument of this case, and participated in the panel's unanimous decision prior to his death.