## CIRCUIT COURT OF FAIRFAX COUNTY

Nels Ackerson

    v.

Sarah Ackerson

           Case No. (Law) 98900

Sarah Ackerson

    v.

Nels Ackerson

           Case No. (Chancery) 63569

           November 21, 1990

### By JUDGE MARCUS D. WILLIAMS

This matter came before the Court on October 16, 1990, on Nels Ackerson's motion for declaratory judgment on the interpretation of a clause in a property settlement agreement. Along with the motion for declaratory judgment, the Court also heard Sarah Ackerson's motion for an increase in child support payments for Peter Ackerson, the couple's minor son.

*I. Whether the issues concerning the property settlement agreement must be decided under the motion for declaratory judgment, or pursuant to prior chancery decrees.*

Mr. Ackerson presents a preliminary issue for the court's decision with regard to the jurisdiction of the Court to decide the meaning of the property settlement agreement (hereinafter "Agreement"). Mr. Ackerson argues that the Court must choose whether it is deciding the matter under Chancery No. 63569, which encompasses prior decrees between these parties, or pursuant to the action at law for declaratory judgment. However, it is unnecessary to reach this issue. This is an action by Mr. Ackerson for a declaratory judgment on the meaning of a term in a property settlement agreement. In Virginia, property settlement agreements are contracts that are subject to the same rules of formation, validity, and interpretation as other contracts. *Smith v. Smith*, 3 Va. App. 510 (1986) (citing *Tiffany v. Tiffany*, 1 Va. App. 11 (1985)). Pursuant to Va. Code § 8.01-184, a declaratory judgment action at law is an appropriate vehicle for the interpretation of a contract. The Court need not decide whether the decrees in the Chancery case which incorporate the property settlement agreement are valid. Because Mr. Ackerson has chosen to proceed by declaratory judgment, the Court will decide the issues raised by the Agreement under the motion for declaratory judgment.

*II. Whether the clause "all reasonable expenditures" for college requires Mr. Ackerson to pay an amount that exceeds the amount of state university or state college expenses.*

The Ackersons entered into the Agreement in Indiana on April 23, 1980. Two days later, an Indiana divorce decree, which incorporated the Agreement, was entered. The following clause of the Agreement is at issue:

> *College Education.* Husband shall pay all reasonable expenditures for a college education for the minor children.

The Ackerson's daughter, Betsy, started college at Duke University in the fall of 1990. The Court must

decide whether the Agreement requires Mr. Ackerson to pay for all of the expenses (approximately $21,000.00 annually) or pay only the amount necessary to cover expenses at a state school, namely Purdue University (approximately $10,000.00 annually).

Mr. Ackerson asserts that "reasonable college expenditures" must be interpreted under Indiana law because the construction of a contract is governed by the law of the place of contracting. Assuming, without deciding, that Indiana law controls, I will apply Indiana law to the interpretation of the Agreement.

An Indiana decision, *Rohn v. Thuma*, 408 N.E.2d 578 (Ind. App. 1980), involved an ambiguous education clause in a property settlement agreement. *Rohn* stated that "the nature, quality and expense of a given institution of higher learning for which a parent may be liable depends upon a myriad of factors. Accordingly, the liability of a parent must be determined on a case by case basis after a careful examination of the relevant considerations." *Rohn*, 408 N.E.2d at 582. The Court there defined these relevant considerations as social and financial circumstances.

The social background of the Ackersons is that of a well-educated family. Mr. and Mrs. Ackerson each received their undergraduate college education at Purdue University. Mrs. Ackerson received graduate degrees from Syracuse University and Indiana University, in political science and law, respectively. Mr. Ackerson received graduate degrees from Harvard University in public policy and law. The Ackerson children, Peter (age 14) and Betsy (age 18), have each attended prestigious private schools in the Washington, D.C., area. Mrs. Ackerson and the children live in McLean, Virginia, and Mr. Ackerson lives in Bethesda, Maryland.

From a financial standpoint, it is clear that Mr. Ackerson draws a substantial income as a partner in the law firm of Sidley & Austin. Mr. Ackerson made $210,000.00 in 1989 and expects to make about $200,000.00 in 1990. However, the evidence shows that Mr. Ackerson has incurred substantial debts, such as a mortgage on his Bethesda home; a revolving loan of $69,000.00; and $106,442.00 of "other debts." Mr. Ackerson has spent almost $80,000.00 on improvements to his Bethesda home since 1988, including

a swimming pool, kitchen, basketball court, deck, alarm system, fence and skylight.[1] Now that his daughter Betsy is emancipated, Mr. Ackerson no longer pays $6,000.00 in yearly child support or $4,500.00 in yearly private school tuition. Mr. Ackerson stated that he made investments to save money for his children's college education, but those investments failed in the early 1980's. There is no evidence of any other savings plan to pay for college.

Although Mr. Ackerson does have substantial debts, he is obviously able to afford an affluent lifestyle. Duke has a high price tag; however, the cost of a school like Duke is reasonable when Mr. Ackerson's income and social circumstances are considered. Furthermore, given the Ackersons' educational background and the educational experience they have provided their children, Duke is a reasonable place for Betsy to attend college.

Based upon the social and financial circumstances here, I find that the term "reasonable" includes the expenses of tuition, books, room, board, and mandatory fees that are associated with Betsy's matriculation at Duke.

Even if we assume that Indiana law is not controlling or persuasive, the intent of the parties at the time the agreement was entered into indicates that "reasonable" would include more than expenditures at a state university or college.

General principles of law instruct the court to determine the intent of the parties at the time of contracting. 17 *Am. Juris.* § 244; *Boyd's Sureties v. Oglesby*, 64 Va. (23 Gratt.) 674 (1873). At the time the Agreement was signed, both Mr. and Mrs. Ackerson were lawyers. Mr. Ackerson's law degree and graduate degree in public policy were from Harvard University, a well-regarded and prestigious university. Mrs. Ackerson was also highly educated, holding a law degree from Indiana University and a graduate degree in political science from Syracuse University. She was employed as an attorney with the Securities and Exchange Commission in Washington, D.C. While at the time of the Agreement, Mr. Ackerson was a man of modest means, he

---

[1] Mr. Ackerson's wife, Sharron, received an inheritance of $30,000.00. Mr. Ackerson testified that this was put toward home improvements.

had every intention of achieving a much better financial position in the future. His ambition is demonstrated by his academic attainments, his partnerships in several farming investments, and by his political aspirations. Also, near the time of the Agreement, Mr. Ackerson was running for Congress in Indiana.

The parties' educational background and financial activities are circumstantial evidence of the type of people they were and of their expectations on the day they entered into the Agreement. Mr. Ackerson was a man who would aggressively pursue bettering his financial position and who had excellent prospects for success. In this context, it is clear that the parties did not envision the limitations of state college expenses for their daughter. There is nothing in the record, except for Mr. Ackerson's post-agreement assertions, that it was intended that Betsy would make a major contribution to her own college expenses.[2] At the time the Agreement was made, the parties did not intend a narrow and specific limitation on college expenditures. The fact that the parties chose to omit specific references in the Agreement to either public or private schools supports the finding that "reasonable" would be determined with regard to Mr. Ackerson's ability to pay and to Betsy Ackerson's academic prospects at the time she became eligible for college.

I find that the parties to the Agreement contemplated that Mr. Ackerson would pay all of his daughter's college expenses, limited only by his financial ability and limited to ordinary and necessary expenses that are incurred by college students in their daughter's circumstances.

Furthermore, based on the record, I find that Mr. Ackerson is financially capable of paying for Duke's tuition, room, board, books, and mandatory fees, and that these expenses are ordinary and necessary ones appropriate for Betsy Ackerson's college education. Other expenses should be borne by Betsy Ackerson.

---

[2] Further, the Court finds there is little or nothing in the record to support Mr. Ackerson's argument of laches. Even if it is assumed that Mrs. Ackerson was compelled to respond to Mr. Ackerson's position on his obligation to Betsy, his position was not communicated to Mrs. Ackerson directly.

*III. Whether Mrs. Ackerson is entitled to an increase in child support.*

Mrs. Ackerson currently receives $500.00 per month in child support, as reflected by a consent decree entered by this court in 1988 ("1988 Decree"). The 1988 Decree ordered Mr. Ackerson to pay $500.00 per month per child. Since Betsy Ackerson is now emancipated, Mr. Ackerson's current obligation is $500.00 per month for Peter. Mrs. Ackerson seeks an increase which will require Mr. Ackerson to pay $2,000.00 per month for Peter.

Mrs. Ackerson is required to prove a material change in circumstances which justifies an alteration in the amount of support; a material change in circumstances alone is not a basis for modification of support. *Yohay v. Ryan*, 4 Va. App. 559 (1987). Mrs. Ackerson sets forth four factors for the court to consider. Each factor will be discussed in turn.

Mrs. Ackerson claims that the amount of support which she receives pursuant to the 1988 Decree is based upon understated income for Mr. Ackerson in 1988. However, the evidence shows that she agreed to $500.00 per child with knowledge that the income statements were outdated and without demanding current statements. Furthermore, this does not constitute any change of circumstances; the fact that the parties agreed to $500.00 per month per child in 1988 remains unchanged.

Mrs. Ackerson claims that an increase in child support is necessary to cover the cost of Peter Ackerson's private school. There are several factors which do not support this assertion. First, private school is not a mandatory expense; it is strictly elective, as Peter Ackerson has no special needs. Second, there is no formal agreement between Mr. and Mrs. Ackerson regarding how a private school will be paid for, if such a school is elected for Peter. Third, Mrs. Ackerson is now relieved of the burden of paying a portion of Betsy's private school tuition. And fourth, Mr. Ackerson will be paying a significant amount toward his children's education expenses due to Betsy's attendance at Duke, which he is obligated to pay by virtue of the Agreement discussed above.

Mrs. Ackerson claims that her expenses and Peter's needs have increased and that Mr. Ackerson has the ability

to pay more support. However, there is no evidence to support these alleged increased expenses and needs. Furthermore, Mrs. Ackerson testified that she is making more money now than at the time of the 1988 decree. Also, I take into consideration that Mr. Ackerson has other significant debts.

Finally, Mrs. Ackerson claims that she is entitled to an increase in child support merely by a showing of increased income for Mr. Ackerson. Her reliance on *Conway v. Conway*, 10 Va. App. 653 (1990), is misplaced. *Conway* held that when a woman proves that her ex-husband's income has increased, she is entitled to an increase in child support according to the guidelines in Va. Code 20-108.2 *unless* her ex-husband shows that the amount sought is unreasonable or in excess of the child's needs. Mr. Ackerson has made a showing of unreasonableness. Mrs. Ackerson has only one child to support now that her daughter is in college. Accordingly, Betsy's private school tuition is no longer a burden on Mrs. Ackerson. The Court also recognizes that Mr. Ackerson now bears the financial responsibility of paying for Betsy's matriculation at Duke, as well as other substantial indebtedness.

Virginia law provides guidelines for determining the appropriate amount of child support. Although neither party has mentioned the guidelines in either oral argument or written brief, the Court is compelled to address them. In my determination that Mrs. Ackerson should receive an amount of child support of $500.00 per month, which is lower than the guidelines' recommendation, I have considered each factor required by Va. Code § 20-108.1 and § 20-107.2. Factors of particular significance were Section 20-108.1(1): actual monetary support for other children; and § 20-107.2(d): the earning capacity, obligations and needs, and financial resources of each parent.

Mr. Condo will draft an order for the motion for declaratory judgment, and Ms. Alper will draft an order for the motion for an increase in child support. After endorsement by counsel, the orders should be submitted to the Court for entry. Each litigant will be responsible for their own counsel's fees.