COURT OF APPEALS OF VIRGINIA

Present: Judges Fitzpatrick, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


JOHN DAVID PELLEGRIN
                                  MEMORANDUM OPINION[*] BY
v.          Record No. 0143-96-4   JUDGE ROSEMARIE ANNUNZIATA
                                       OCTOBER 29, 1996
DIANE LYNN BINGMAN PELLEGRIN


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                       Jack B. Stevens, Judge

              Daniel G. Dannenbaum (The Lewis Law Firm, on
              briefs), for appellant.

              David M. Levy (Surovell, Jackson, Colten &
              Dugan, P.C., on brief), for appellee.


     Appellant, John David Pellegrin ("husband"), and appellee,

Diane Lynn Bingman Pellegrin ("wife"), were divorced by final

decree entered March 5, 1991, affirming, ratifying and

incorporating the parties' Property, Custody, and Support

Settlement Agreement dated February 12, 1990 (the "agreement").

In 1995, each party filed motions to compel the other to comply

with the agreement.  Husband appeals from the court's order

resolving the issues raised in the parties' cross-motions,

contending the following: (1) the court erred in ordering husband

to provide an accounting of accounts identified as the "First

American" accounts; (2) the court erred in relying on tax tables

to determine the amount husband owed wife for the 1994 income tax

liability incurred on support payments from husband; (3) the

_____
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

court erred in ordering husband to pay $3,433.29 to wife for unreimbursed medical expenses and in refusing to allow husband to present evidence of wife's waiver of her right to such payments; (4) the court erred in ordering husband to pay wife $7,500 in attorney's fees; (5) the court erred in interpreting "gross income" as used in paragraph eight of the agreement to mean income earned only from wife's employment; and (6) the court erred in refusing to allow husband to fully and fairly present his case-in-chief.  Finding no reversible error, we affirm the trial court's order.

I.

In her motion, wife alleged that husband had failed to comply with paragraph nine of the agreement.  Paragraph nine provides, in part, that "there exist certain trust funds for the children as to which husband shall remain trustee but shall on a quarterly basis keep wife apprised as to the status of such trust accounts, including deposits and withdrawals and institutional statements as to same."  She requested the court to compel husband to provide an accounting of certain funds held in the First American Bank and to reimburse the accounts for any improper expenditures.

The court found insufficient the accounting husband had provided relative to the First American accounts.  Accordingly, the court ordered husband to comply with the agreement by providing wife an additional accounting, with copies of the

checks he had drawn on the accounts.

On appeal, husband alleges that the parties' agreement does not contemplate the First American accounts and that the court therefore erred in ordering the accounting. However, as husband's only objection to the trial court's ruling was that he had provided a sufficient accounting of the First American funds, the issue he now raises is procedurally barred. See Rule 5A:18.

II.

Wife alleged husband had failed to pay her taxes on the $12,000 in support payments she received in 1994. According to the federal and state tax tables which wife submitted in her pleading, the tax liability on $12,000 was $2,275 in 1994. Neither at the hearing nor on appeal does husband dispute the amount of support wife received, the accuracy of the tax tables, or the amount of the tax liability which results from the application of the tax tables.

At the hearing, husband argued that, because of certain deductions and exemptions available to wife, wife's ultimate tax liability for a given year could be less than the tax solely attributable to wife's support income by application of the tax tables, or might even result in a tax refund. Accordingly, husband argued he should receive a credit for wife's deductions and exemptions or share proportionally in any tax savings or refund. Without hearing evidence, the court disagreed, finding that the language of the agreement was unambiguous in requiring

husband to pay the tax on the support payments, regardless of any deductions wife might or should have taken. Accordingly, the court ordered husband to pay $2,275 as the tax on wife's support payments for 1994.

On appeal, husband contends that the court erred in determining his tax obligation in accordance with the tax tables. He argues that the agreement unambiguously requires him to pay only the "actual" tax liability wife incurs on her support income in light of her total tax liability for a given year. We disagree with the interpretation of the agreement husband urges this Court to adopt.

"`Where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself.'" Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985) (quoting Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983)). "`[C]ourts cannot read into contracts language which will add to or take away from the meaning of the words contained therein,'" Great Falls Hardware Co. v. South Lakes Village Center Assocs., 238 Va. 123, 126, 380 S.E.2d 642, 644 (1989) (quoting Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)), even when the contract may appear to reach an unfair result, see Kaufman v. Kaufman, 7 Va. App. 488, 501, 375 S.E.2d 374, 381 (1988).

Paragraph eight provides, in part, that "[h]usband will pay

wife's taxes (State and Federal) on the spousal support payments for the years 1990-1995."  The issue is not further addressed. Nothing in this provision relates husband's obligation to wife's taxable income, as derived from her deductions and exemptions, as well as all sources of income.  Nothing in the agreement even remotely suggests husband is entitled to share in any refund of taxes due wife or that his obligation bears any relation to wife's decisions concerning exemptions and deductions.  A plain reading of the provision's language shows that it premises husband's obligation not on wife's ultimate tax liability, but on her taxable income derived solely from support payments.

We are unpersuaded by husband's argument that the strict application of the tax tables results in a "windfall" to wife. Strict application of the tax tables results in a federal tax of approximately 15% on $12,000.  That extenuating circumstances may result in wife having to "actually" pay less than 15% of $12,000 is no more a "windfall" to wife than would be the benefit to husband of applying the tax tables to the support income alone were wife's total tax liability assessed at a rate greater than 15% of her total taxable income.

The agreement, of course, provides no mechanism for dealing with the myriad potentialities that could arise.  We conclude the omission was intentional, designed to promote simplicity and constancy in the application of the agreement during the life of its enforcement.  In accordance with well-established principles,

we have no authority to read the agreement to provide anything else.  As such, we affirm the decision of the trial court.

In her motion to compel, wife alleged that husband failed to reimburse her for medical expenses not covered by insurance in the amount of $2,730.42 and asked the court to order husband to reimburse her for "all of the uncovered medical and dental expenses that she has paid." In support of her position, wife relies on paragraph thirteen of the agreement, which states, in part, that husband shall provide health insurance for wife and the children under the policy he had in effect at the time of the agreement, "or a comparable policy thereto," and pay either directly or by reimbursing wife the expense of any necessary medical expense not covered by the insurance.

The court admitted evidence of wife's medical expenses for which she claimed reimbursement. This evidence shows expenses in the amount of $2,730.42, as wife alleged in her pleading, and shows an additional $1,392.57 for expenses allegedly incurred after she filed her pleading.

On appeal, husband contends the court erred in considering wife's evidence that she had an additional $1,392.57 in expenses on the ground that wife had failed to allege that amount in her pleading. It is undisputed that wife did not allege the $1,392.57 amount in her pleading.

Moreover, husband waived any objections he could raise to the admission of such evidence and, therefore, his contention is procedurally barred. Husband not only failed to object to the

admission of wife's evidence showing that amount, see Rule 5A:18, he also sought, through his own testimony, to establish that he had, in fact, reimbursed wife some of the $1,392.57 amount. See Snead v. Commonwealth, 138 Va. 787, 801-02, 121 S.E. 82, 86 (1924) (waiver of objection where objecting party introduces on his own behalf testimony similar to that to which the objection applies). Thus, regardless of whether such evidence should have been admitted, we cannot say that the trial court erred in considering it in light of husband's waiver.

Husband also contends that the amount of the court's award is not supported by the evidence. We disagree. Based on wife's evidence, the total amount husband owed was $3,897.99. In its final order, however, the court ordered husband to pay $3,433.29. That amount is $464.70 less than wife's evidence proved she was owed. Although the evidence in the case was in conflict, the conflict was resolved by the trier of fact in favor of wife and there is no question wife's evidence supports the award. See, e.g., Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992) (conflicts in evidence present factual questions that are to be resolved by the trial court, and its findings will not be disturbed on appeal unless plainly wrong).

Moreover, even were we to consider husband's testimony that he was due an offset of $145 and his proffer that he was due an additional offset of $199, the alleged total offset is less than $464.70, the amount which wife's evidence shows should have been

included in the award but was not. Thus, any error of the trial court in computing the award benefits husband and is no basis for complaint. See, e.g., Director General v. Lucas, 130 Va. 212, 218, 107 S.E. 675, 677 (1921) (error favorable to appellant constitutes no grounds for reversal).

Husband further contends that wife waived her right to be reimbursed for her medical expenses, arguing the expenses were incurred at a time when she failed to cooperate with his attempts to procure medical insurance for her "comparable" to that which existed at the time of the agreement. Husband contends that such failure was a waiver of her right to be reimbursed. He also contends that the court erred by refusing to allow him to fully examine wife on this issue in his case-in-chief.

This argument is without merit. The agreement requires husband to provide insurance coverage for wife under the plan existing at the time of the agreement or under a "comparable" plan. Husband attempted to prove wife's alleged noncooperation with his efforts to obtain comparable coverage through the testimony of Julie Bonilla, husband's office manager and bookkeeper. While Bonilla testified that wife had not been cooperative with husband's recent attempts to change insurance coverage, husband produced no insurance policies for purposes of comparison. Nor did he produce an insurance expert to compare policies. The court properly sustained wife's objections to Bonilla's testimony on the grounds that there was no foundation

upon which she could state the new insurance coverage was "comparable" to the former policy. Moreover, Bonilla testified that wife's insurance coverage, as it existed at the time of the agreement, was in effect when she incurred the medical expenses in question. By inference, there was no need for a new health insurance plan and, under the agreement, husband was obligated to reimburse wife her medical expenses. In sum, absent evidence establishing the need for a new policy or, assuming the need was established, absent evidence showing the comparability of any new coverage husband sought to substitute for the former policy, evidence of wife's failure to cooperate is a moot point, and the trial court's ruling on the issue was not error.

IV.

Paragraph eight of the agreement provides, <u>inter</u> <u>alia</u>, that

> [i]f, as of May 1, 1995, the wife is employed, or thereafter becomes employed, with an annual gross income in excess of $25,000.00, husband's obligation to pay spousal support and maintenance shall be reduced . . . .

In the absence of this provision, the parties do not dispute that as of May 1, 1995, husband's support obligation was $3,000 per month. Nor do the parties dispute that during the six months from May to October 1995, husband paid wife $2,000 per month.

Husband alleged wife was employed and "earned gross annual income in excess of $25,000.00" and sought to employ the provision to reduce his support obligation. Wife did not deny she was employed but alleged she was "not employed with an annual

- 10 -

income in excess of $25,000" and sought to enforce what she considered to be a $6,000 arrearage.

At the hearing, husband's counsel proffered that wife's annual income included $9,000 from employment, $19,600 from rental income, and $24,000 from alimony for a total gross income of $52,600. However, before hearing testimony, the court ruled that the agreement referred to "earned income of the wife of $25,000, not rental income." Accordingly, the court ordered husband to pay the $6,000 arrearage.

On appeal, husband argues that the phrase "with an annual gross income in excess of $25,000.00" refers to income from whatever source derived, not to income earned solely from employment. We disagree.

In the context of paragraph eight, we find the phrase "with an annual gross income in excess of $25,000.00" unambiguously refers to gross income from employment. As wife contends, the phrase clearly places a condition on wife's employment which must be met before the reduction provision applies. Under husband's construction, even support payments in excess of $25,000 annually, which would clearly occur if husband continued to pay $3,000 per month, would trigger an automatic reduction under this provision, so long as wife was employed and irrespective of any wage she earned. Nothing in the agreement supports the conclusion that the parties intended such anomalous results. The trial court's decision on this issue is, therefore, affirmed.

V.

Next, husband argues on appeal that the trial court erred in refusing to allow him to fully present his case-in-chief and, specifically, to conduct direct examination of wife on the issue of her compliance with his attempts to procure insurance. There is no merit in this contention.

This case was scheduled to be heard in one day. Wife's case-in-chief was presented first, interrupted by husband's out-of-turn examination of one of his witnesses, Julie Bonilla. After wife testified in her own behalf, husband's counsel cross-examined her, and ended his examination, noting he intended to recall wife in husband's case-in-chief.

The presentation of husband's direct testimony in his case-in-chief continued until the end of the day, necessitating a second day of hearing. The court stated that the direct examination of husband by husband's counsel would have to be concluded before adjournment that day. The court further stated it would continue the case to the following day to allow wife's counsel the opportunity to cross-examine husband. Wife's counsel then agreed to ask only two questions on cross-examination so the case could end that day.

Husband's counsel continued the direct examination of husband, eliciting testimony on the offsets to be applied to wife's claimed medical expenses. While husband testified to the amounts he claimed to have made in reimbursing wife, he could not

produce specific checks reflecting the payments he claimed. The court declined to hear further testimony on the issue, ordering husband to produce the checks instead. Wife then cross-examined husband briefly. The court set the matter down for a second day of hearing and stated that no new witnesses would testify on that day. Husband did not object.

When the hearing resumed, husband was represented by different counsel. Husband asked for a few hours to continue to present his case on his motion to compel. The court initially refused, responding that the issues husband raised in his motions were "fully explored" at the October hearing. Husband's counsel persisted, arguing that husband had not had a chance to call wife in his case-in-chief and, due to the scope of wife's direct, had not been able to cross-examine her on the issue of courses for which husband had paid and which wife had allegedly dropped. The court granted husband's request, and husband called and examined wife on that issue. The court also allowed husband the opportunity to present the specific checks it had requested in the earlier hearing to demonstrate any offsets to wife's claimed medical expenses. Husband never produced the checks requested for the court's review.

Trial conduct is committed to the discretion of the trial court. E.g., Cunningham v. Commonwealth, 2 Va. App. 358, 365, 344 S.E.2d 389, 393 (1986). In his case-in-chief, husband examined Julie Bonilla and gave testimony himself. The court

- 13 -

interrupted the testimony of Bonilla because it properly found her testimony irrelevant to the issues before it. The court directed husband to conclude his testimony at the end of the first day of hearing and specifically stated, without objection, that no new witnesses would be heard on the second day of the hearing. On the second day of the hearing the court agreed to allow husband to produce specific checks establishing his claim of offset to wife's unreimbursed medical expenses. Husband failed to produce the specific checks to demonstrate the alleged offset. Thus, any harm to husband's case-in-chief on these issues resulted from his own failure of proof.

Furthermore, the court permitted husband to call and examine wife in his case-in-chief on the second day of the hearing to the extent he requested. Having failed to request further examination of wife on the issue of her failure to cooperate in obtaining comparable health insurance, this issue on appeal is procedurally barred. See Rule 5A:18. Husband's only request respecting the scope of examination of wife was granted.

VI.

Next, husband argues the court erred in awarding wife attorney's fees. Paragraph twenty-four of the agreement provides that expenses, including attorney's fees, incurred by one of the parties in successfully enforcing any of the agreement's provisions or in successfully defending any action for enforcement shall be borne by the other party. It is clear both

from the trial court's order and, thus, from the posture of this case on appeal, that wife was successful in both enforcing the agreement's provisions and in defending husband's actions for enforcement.

On appeal, husband contends the fee award was excessive. He further argues that wife failed to present proper proof to support the award of attorney's fees and that wife should have presented expert testimony to justify the fees. Husband failed to raise these objections to wife's evidence before the trial court. Accordingly, husband's contention that wife presented insufficient evidence in support of the attorney's fees award and that the amount of the award was excessive is procedurally barred. See Rule 5A:18.

Accordingly, the decision of the circuit court is affirmed. This matter is remanded to the trial court to assess and award appropriate appellate attorney's fees to wife.

Affirmed and remanded.