COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Willis and Annunziata
Argued at Alexandria, Virginia


DONALD A. DOUGLAS
                                        OPINION BY
v.   Record No. 0313-98-4   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                      DECEMBER 1, 1998
BONNIE JEAN HAMMETT, F/K/A
BONNIE JEAN DOUGLAS


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      Marcus D. Williams, Judge

            Dan Burke (Tyler, Bartl, Burke & Albert, on
            brief), for appellant.

            No brief or argument for appellee.



     Donald A. Douglas (husband) appeals the trial court's order

requiring him to reimburse Bonnie Jean Hammett (wife) for college

expenses she paid for their son.  He contends the trial court

erred in awarding reimbursement for living expenses while the

child was attending school and the purchase price of a computer.

 Finding no error, we affirm.

                                I.

     "On appeal, we construe the evidence in the light most

favorable to wife, the prevailing party below, granting to her

evidence all reasonable inferences fairly deducible therefrom."

Donnell v. Donnell, 20 Va. App. 37, 39, 455 S.E.2d 256, 257

(1995).  Husband and wife were married in 1972 and one child,

Donald Douglas, Jr. (Donald), was born of the marriage.  The

parties entered into a separation agreement dated January 27,

1979.  Paragraph five of the agreement provided that the husband

would "pay the expenses of a college education for the child."[1] The agreement was incorporated into the final decree of divorce entered May 7, 1980.

At the time of the hearing in this matter, Donald had recently graduated from East Carolina University (University). He attended the University from 1992 through 1997 on a full athletic scholarship that covered tuition, books, housing and the university meal plan. According to N.C.A.A. rules, Donald was not allowed to work during the academic year. As a result of this restriction, his mother sent him a monthly allowance for living expenses not covered by his scholarship.[2] These living expenses included transportation, clothes, laundry, meals outside

[1]That paragraph provides:

> SUPPORT AND MAINTENANCE OF CHILD
> During the life of the Husband, the Husband shall pay to the Wife the sum of $270 per month for the support and maintenance of Donald Adam Douglas, payable on the 15th day of each month commencing February 15, 1979, the same to continue for said child until he attains eighteen (18) years of age, dies, marries or becomes earlier emancipated, whichever is the first to occur.
> The Husband agrees to pay all medical, dental and other related expenses incurred on behalf of the child. The Husband agrees that he will pay the expenses of a college education for the child.

[2]Donald received $150 per month during his first year, $200 per month during his second year, and $350 per month for the last three years when he lived off-campus. While the University continued to pay him a monthly stipend for rent during his last three years, he was responsible for any additional amounts not covered by the stipend, such as utilities.

the college meal plan, long distance phone bills, basketball league fees not paid by the University, and other incidentals.[3] Donald testified that his father had given him money only "once or twice" during the five years of college.

The educational program at East Carolina is generally four years. However, Donald spent five years attaining his undergraduate degree because he "red-shirted"[4] one year due to medical reasons. Additionally, Donald testified he could have graduated in four years "if I would have taken a heavier load, which would have made it that much more difficult to keep decent grades due to our travel schedule." To make up academic credits, he attended summer school during his first year of college because the summer school tuition was covered by his athletic scholarship. He earned both a bachelor's of science degree in business administration and a master's degree in business administration from the University.

In June 1997, wife filed a petition in the circuit court to enforce paragraph five of the parties' property settlement agreement. She argued that the agreement required husband to pay all necessary college expenses for Donald. Wife sought reimbursement for actual expenditures, including the purchase

---

[3]Mother offered into evidence copies of checks, bank statements, and receipts for expenses that were alleged to be cause-related.

[4]Donald testified that "red-shirt" is a term meaning that the individual plays on the practice squad of the basketball team for a year to retain a year of eligibility.

price of a computer used by Donald during college.  Wife's

evidence established that she spent approximately $36,600 in

uncovered college expenses.

Following an <u>ore</u> <u>tenus</u> hearing, the trial court awarded

college-related living expenses in the amount of $150 per month

for nine months for four years.  The court stated:

> In many respects, Mr. Douglas is very
> fortunate in that his son has the talent and
> wherewithal to obtain a very, very good
> scholarship to cover many of the expenses
> associated with a college education.
> But the agreement is the agreement, and
> only requires Mr. Douglas to pay expenses for
> a college education, which means any expenses
> that are reasonably related to a college
> education.
>
> *        *        *        *        *        *        *
>
> [T]here are cause-related expenses that were
> not covered by the scholarship.  And I
> believe the proof is sufficient to show some
> of this, . . . .
>       . . . I think that [husband] is liable
> for four years of expenses, first of all.
> And given the nature of the requirements of
> his son for food that was not provided by the
> cafeteria given his schedule and his needs,
> and for clothing which I believe under the
> circumstances of this case are related to
> college because he couldn't work, and one
> does have to be clothed for class. . . .
>       And he had no other means of obtaining
> income because he couldn't work, I think,
> under the circumstances.  In this case,
> clothing is related; not necessarily in all
> cases, but here because of the special
> requirements.
>       Given the fact that he wasn't buying
> clothes every day necessarily, or eating out
> every day, it is my estimate based on the
> evidence that the college-related living
> expenses would not exceed $150 per month for
> each of the four years.
>       There is no evidence that there was any

> increased need to the $200 or $300 that [was] given to him.
>
> . . . I think the evidence adequately supports $150 per month.

The trial court also found the computer purchased for Donald was a "cause-related" expense of college and covered by paragraph five of the parties' agreement. Accordingly, husband was ordered to reimburse wife a total of $10,123, which included $5,400 in college living expenses ($150 per month for nine months for four years) and $4,723, the cost of a computer.

## II.

On appeal, husband contends the trial court erred in awarding wife reimbursement for monies she spent on Donald's college expenses.[5] Husband first argues the trial court erroneously ordered him to pay $150 per month for college living expenses when Donald was receiving a full athletic scholarship. We disagree.

Separation agreements and property settlement agreements are contracts. See Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985); and Jones v. Jones, 19 Va. App. 265, 268-69, 450 S.E.2d 762, 764 (1994). "[T]herefore, we must apply the same rules of interpretation applicable to contracts generally." Tiffany, 1 Va. App. at 15, 332 S.E.2d at 799. Where a settlement agreement is unambiguous, its meaning and effect are questions of

---

[5]Husband raises five assignments of error, all of which deal with the issue of whether the trial court erred in ordering husband to pay certain college expenses uncovered by Donald's athletic scholarship.

- 5 -

law to be determined by the court.  See id.  Moreover, "[w]here the agreement is plain and unambiguous in its terms, the rights of the parties are to be determined from the terms of the agreement and the court may not impose an obligation not found in the agreement itself."  Jones, 19 Va. App. at 268-69, 450 S.E.2d at 764; see also Waynesboro Village v. BMC Properties, 255 Va. 75, 79-80, 496 S.E.2d 64, 67 (1998) ("[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. . . . This is so because the writing is the repository of the final agreement of the parties.").  Although parties may advance different interpretations of the provisions in an agreement, this "does not necessarily imply the existence of ambiguity where there otherwise is none."  Smith v. Smith, 3 Va. App. 510, 513-14, 351 S.E.2d 593, 595 (1986).  "`An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time.'"  Id. at 513, 351 S.E.2d at 595 (quoting Renner Plumbing v. Renner, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983)).

In the instant case, we do not view the term "expenses for college education" as ambiguous.  Husband argues the term should be strictly limited to tuition, books, room and board, and any other fees necessary to participate in the educational program.  Under the plain meaning rule, we believe the term "college expenses" includes tuition, room, board, books, fees, clothing,

allowances and incidentals.  See, e.g., In Re Marriage of
Pearson, 603 N.E.2d 720, 730 (Ill. App. Ct. 1992) (holding that
"the court is authorized to order payment of a child's college
expenses, including reasonable living expenses, from the property
and income of either or both parents" (emphasis added)); In re
Marriage of Falat, 559 N.E.2d 33, 37 (Ill. App. Ct. 1990) (noting
that educational expenses includes "reasonable living expenses"
(emphasis added)); In Re Marriage of Pauley, 432 N.E.2d 661, 665
(Ill. App. Ct. 1982) ("[t]herefore, educational expenses are to
include more than just tuition and book fees.  The mother is
entitled to reasonable living expenses . . ." (emphasis added));
Harding v. Harding, 374 N.E.2d 1304, 1306 (Ill. App. Ct. 1978)
(holding that expenditure of $10,000 for "educational, living,
and incidental expenses during three semesters of college . . .
[was not] excessive or otherwise unreasonable" (emphasis added));
Dupuis v. Click, 604 A.2d 576, 577 (N.H. 1992) (noting that
college expenses means "costs of room, board, tuition, books,
activity fees, registration fees, costs of laundry . . . and
$20.00 per week payable directly to such child while said child
is actually in attendance at school and not employed"); Brake v.
Brake, 413 A.2d 422, 423-24 (Pa. Super. Ct. 1979) (reinstating
award for college expenses including "additional money for
incidental expenses such as books, paper, and laundry" (emphasis
added)); see also In Re Marriage of Dieter, 648 N.E.2d 304, 310
(Ill. App. Ct. 1995) (holding that hourly flight costs required

to obtain bachelor's degree were college expenses); Kappus v. Kappus, 616 N.Y.S.2d 790, 791 (N.Y. 1994) (holding that educational expenses included costs of placement tests and summer program abroad).

The parties did not specify in their property settlement agreement precisely what expenses would be cause-related to Donald's college education or what would happen if Donald received a scholarship. However, it is reasonable to include some amount of ordinary living expenses in determining the normal expenses for a college education. A student could not attend college in a vacuum. This conclusion is fully consistent with the rule in Virginia that the words the parties use are normally given their "usual, ordinary, and popular meaning." D.C. McClain, Inc. v. Arlington County, 249 Va. 131, 135, 452 S.E.2d 659, 662 (1995). Husband put no limitation on his obligation to pay "the expenses of a college education." As the trial judge found, this would include reasonable cause-related, or college-related, expenses. To hold otherwise would render the parties' own language meaningless.

In the instant case, wife presented evidence in support of her claim for reimbursement of cause-related college expenses. Wife testified that she sent Donald a monthly allowance of $150-350 per month for living expenses. Donald described his daily academic and athletic schedule, which often required him to eat his meals during time periods when the cafeteria was closed.

Additionally, he testified that he was not allowed to work during the academic year and had no other source of income for living expenses. Finally, wife presented numerous checks, receipts, and statements to support her claim that the college-related expenses were reasonable and necessary.

The trial court's decision, when based upon credibility determinations made during an ore tenus hearing, is owed great weight and will not be disturbed unless plainly wrong or without evidence to support it. See Fauquier County Dept. of Social Services v. Robinson, 20 Va. App. 142, 154, 455 S.E.2d 734, 740 (1995) (citing Hughes v. Gentry, 18 Va. App. 318, 321-22, 443 S.E.2d 448, 451 (1994)). The trial court heard the evidence and determined the reasonableness of the expenditures. It awarded $150 per month for nine months for four years of college, an amount significantly less than that requested. Accordingly, we hold the trial court did not err in awarding wife a $5,400 reimbursement for living expenses and incidentals she incurred on Donald's behalf during his college career.

Next, husband contends the trial court erred in awarding the cost of a computer bought for Donald because it was not "necessary" to Donald's education and was purchased just prior to the time when he should have graduated. We disagree.

The trial court again found that the evidence established the computer to be a covered college expense. Indeed, Donald testified that he used the computer for academic purposes and

particularly to maintain and keep current with his classes when he was required to be away from school for a basketball game. The evidence established the cost of the computer to be a reasonable college expense, and the trial court did not err in awarding reimbursement for Donald's computer.[6]

Husband is bound by the property settlement agreement and the contractual obligations he undertook therein. Finding no error, we affirm.

Affirmed.

---

[6]Husband also contends for the first time on appeal that the circuit court was without jurisdiction to consider wife's petition because the claim was tantamount to a request for additional spousal or child support, which should have been sought in the juvenile and domestic relations district court. This claim is without merit and because it is not a jurisdictional issue, it is barred by Rule 5A:18.