AGEE, Judge,
with whom FRANK, Judge, joins, concurring.
While I generally agree with the foundational analysis of the majority’s opinion and the end result in this case, I write separately to express the basis for the validity of “self-executing” child support agreements and the appropriate review of the incorporated agreement in this case.
The public policy issue arising in this case is whether a divorce decree’s incorporated terms regarding child support are valid where those terms include an agreed upon change in child support payments upon the occurrence of certain future events without further action of the court. This type of provision has been termed “self-executing” although that is not a term used in the Code or referenced widely in case law.[7]
*256 Father apparently deemed the agreement at bar to be “self-executing” and unilaterally reduced his child support payments as each child reached the age of eighteen. Both the trial court and a panel majority of this Court found these actions violative of public policy, holding that the child support payments could only be changed by court order. See Shoup v. Shoup, 34 Va.App. 347, 542 S.E.2d 9 (2001). On that basis, the panel majority also found the incorporated self-adjustment provision for periodic fluctuations in child-care expense payments to be invalid, although the trial court did not. However, upon rehearing en banc, the members of this Court, with whom I join, give effect to “self-executing” child support agreements.
Clearly, Code § 20-109.1 provides that parties can agree to the terms of child support within a custody and property settlement agreement and submit that agreement to the court. See Richardson v. Richardson, 10 Va.App. 391, 392 S.E.2d 688 (1990). The child support terms become the terms of the court’s decree if the court affirms, ratifies and incorporates those into its decree. “Code § 20-109.1 provides that a court may affirm, ratify and incorporate by reference in its decree any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties ... and the care, custody and maintenance of their minor children.” Rodriguez v. Rodriguez, 1 Va.App. 87, 90, 334 S.E.2d 595, 596 (1985). “Where the court does ... incorporate the agreement or provisions thereof, it shall be deemed for all purposes to be a term of the decree and enforceable as such ... by the contempt power of the court.” Id. at 90, 334 S.E.2d at 597 (citation omitted). The plain meaning of Code § 20-109.1 is, therefore, the basis upon which the validity of self-executing child support agreements rests.
“When the legislature has spoken plainly courts may not change or amend legislative enactments under the guise of construing them. The province of construction lies wholly within the domain of ambiguity. ... That which is plain needs no interpretation. Winston v. City of Richmond, 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954).”
*257 Armstrong v. Commonwealth, 36 Va.App. 312, 320, 549 S.E.2d 641, 645 (2001) (quoting Jones v. Commonwealth, 16 Va.App. 354, 358, 429 S.E.2d 615, 617 (1993)).
A child support agreement presented to a court under Code § 20-109.1 is not, however, entitled to the same mandatory-recognition by the court as is an agreement for spousal support under Code § 20-109(C). The court must make a determination that the terms of a child support agreement (which become terms of the decree) are in the best interests of the child.[8] Code § 20-108.1(B); see also Blackburn v. Michael, 30 Va.App. 95, 515 S.E.2d 780 (1999); Watkinson v. Henley, 13 Va.App. 151, 409 S.E.2d 470 (1991).
Thus, a court may incorporate the parties’ agreement as to child support into its decree, and the terms will be enforceable upon an initial finding that the agreement is in the child’s best interest. This is true even when the terms provide for future changes in child support, without further court action, provided (1) the court approves of the future changes when it incorporates the terms into its decree and (2) the court’s continuing authority under Code § 20-108 to revise and alter child support in the future is not limited. See generally Kelley v. Kelley, 248 Va. 295, 449 S.E.2d 55 (1994); Schmidt v. Schmidt, 6 Va.App. 501, 370 S.E.2d 311 (1988); Tiffany v. Tiffany, 1 Va.App. 11, 332 S.E.2d 796 (1985).
A court’s ratification of an incorporated agreement’s child support terms carries the express or implied imprimatur that the court has found those terms in the best interest of the children. See generally Scott v. Scott, 12 Va.App. 1245, 408 S.E.2d 579 (1991). As the en banc majority correctly concludes, such a finding that the agreed child support is in the children’s best interests can be made under a “self-executing” *258 agreement, one which modifies the amount of child support at a future date upon the occurrence of a modification event. Such an adjustment may occur without additional court approval of the modification at the time the modification is implemented. See Schmidt, 6 Va.App. 501, 370 S.E.2d 311; Tiffany, 1 Va.App. 11, 332 S.E.2d 796.
In the context of a “self-executing” child support award, like any other award of child support, a court must first determine that the future adjustments are in the child(ren)’s best interests. Such a determination requires that both the event(s) triggering adjustment, and the terms of adjustment, are clear and definitive. See id. It should be self-evident that a court cannot determine that a future self-executing adjustment to child support is in a child’s best interests if the triggering events or the terms of adjustment cannot be determined.
Accordingly, I concur with the majority, in reasoning and result, to affirm the trial court’s decision to credit father for the adjustments in child-care expense payments. No further court intervention is required for the parties to adjust the child-care expense reimbursement, which is based on clear and definitive modification terms (actual expenditures divided on a pro rata share of verified annual incomes). While this adjustment provision is plainly self-executing, the salient reason it meets muster is that a court does not employ guesswork to decide if this method of future adjustment is in the best interests of the children when entering the decree, which incorporates the agreement.
The same judgment, however, cannot be given on future changes in‘child support payments under the Shoup decree and incorporated agreement. Although the majority reads the decree to provide “for a reduction in support upon the emancipation of the parties’ minor children,” I do not find definitive direction in the decree and its incorporated agreement as to how a revised amount is to be calculated “immediately without the need of any implementing action.”
While the decree provides “[father] is ordered to pay [mother] child support in accordance with all the terms, provisions *259 and requirements of their June 27,1994 Custody, Support and Property Settlement Agreement,” it then specifically fixes child support:
[Father] shall pay the amount of $2,177.00 per month, as and for child support, to [mother]. Child support shall continue until a minor child dies, marries, becomes emancipated, or reaches the age of eighteen years, whichever occurs first, or until further order of the court[.]
(Emphasis added.) Neither the decree nor the incorporated agreement definitively establishes the adjustment to the initial child support amount as each child turns eighteen years of age. However, the decree is clear that the initial set amount of $2,177 is in effect only until the first child reaches the age of eighteen unless there is a prior order changing it. There was none.
There are no specific adjustment terms in the decree and its incorporated agreement directing a self-executing adjustment to the child support amount. Instead, one must intuit that the reference in the decree to pay child support “in accordance with all the terms ... of their ... property settlement agreement” is an enforceable link to some part of that agreement. Father posits that link to this portion of the agreement:
[5]e. If there is any change in circumstances, the parties shall follow the child support guidelines contained in § 20-108.2 of the Code of Virginia or its successor statute and any other relevant Virginia statutes and case law for determination of child support.
(Emphasis added.)
The agreement does not provide that the child support guidelines then in effect fix the terms of modification, but instead requires the parties to follow the guidelines plus “other relevant Virginia statutes and case law for determination of child support.” Under the language of the incorporated agreement, further judicial intervention would be required to definitely determine how other “relevant Virginia statutes and case law” would alter the guideline amount. Clearly, such *260 a provision is not “self-executing,” as it is not “effective immediately without the need of implementing action.”
More importantly, a court asked to incorporate such a provision could not determine, on the date it entered its decree incorporating the agreement, what the future child support terms would be upon one of the Shoup children attaining age eighteen. Thus, no finding could be made that such unknown terms were in the best interests of the remaining unemancipated children.[9] If the child(ren)’s best interests cannot be ascertained, then the portion of the decree setting out an unknown future child support adjustment would not be susceptible to self-adjustment by the parties without further action of the court.
The plain terms of the decree required the monthly payment of $2,177 until a child attained the age of eighteen. The decree is silent as to what amount then would be due. It is clear, though, that the decree does not set $2,177 as the amount of continuing monthly child support due from father for the remaining unemancipated children.
Upon a Shoup child reaching age eighteen, the decree and incorporated agreement are manifestly not self-executing.[10] In plain terms, neither party knew what the appropriate amount of child support for the remaining unemancipated child(ren) was to be under § 5(e) of the agreement.
However, the trial court determined an arrearage, and found father in contempt, based on the $2,177 monthly amount, but without any finding as to what child support amount was in the best interests of the remaining unemancipated children and required by the decree and incorporated *261 agreement. Clearly, that decision of the trial court was erroneous. Father’s duties as to child support were then not definite and he could not, therefore, be found in contempt.
As a general rule, “before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied.”
Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977) (citation omitted).
Accordingly, I concur in the result reached by the majority to reverse the trial court’s finding of contempt as to father and to remand the issue of any child support arrearage to the trial court for a determination of the appropriate child support amount. To do so, the trial court needs to determine the child support guidelines in effect as each child attained age eighteen and how “other relevant Virginia statutes and case law” affects, if at all, the appropriate child support amount for the remaining unemancipated children). Only after such a determination is made can it be further determined if an arrearage or overage exists as finally adjusted for the child-care expenses. In view of the necessity to remand to the trial court, I would also reverse the trial court’s award of attorney’s fees and remand to the trial court for reconsideration on that issue as well. Whether any attorney’s fees are due, and to and from whom under the terms of the agreement, is dependent on the ultimate determination as to the child support payment arrearage or overage, if any.

. For current purposes, I will assume a self-executing child support agreement is one in which terms "effective immediately without the need of any type of implementing action” are used. See Black’s Law Dictionary 1364 (7th ed.1999); see also Schmidt v. Schmidt, 6 Va.App. 501, 506, 370 S.E.2d 311, 314 (1988).

. The best interest of the child or children is the paramount and guiding principle in setting child support, whether it be adopting the presumptive amount, calculating an alternative sum after the presumptive amount has been rebutted, ordering the amount agreed upon between the parents, or approving, ratifying and incorporating, in whole or in part, the child support provisions of a contract. See Watkinson v. Henley, 13 Va.App. 151, 153, 409 S.E.2d 470, 471 (1991).

. Had the agreement referenced a definitive standard, such as a specific monetary amount or simply the guidelines in effect at the child’s eighteenth birthday, the court would have definitive terms upon which to make a finding of the best interests of the remaining unemancipated children as to the future adjustment.

. While § 5(e) of the incorporated agreement is not self-executing, that does not affect its validity or enforceability when the court determines any child support adjustment.