PER CURIAM.
Appellant Susan Reynolds (Wife) appeals the trial court’s order granting Martin Diamond’s (Husband) exceptions and setting aside the general master’s report. We reverse and remand with direction to approve the general master’s report; however, we amend the master’s report to compel Husband only to pay the reasonable costs of his sons’ education, including their living expenses.
In 1978, Husband and Wife entered into a property settlement agreement. The agreement subsequently was incorporated into the final judgment of dissolution of marriage. Under the terms of the agreement, Husband was obligated to pay child support for his twin sons Joshua and Jason “until each child reaches the age of eighteen (18) years or dies, marries or becomes self-supporting, or otherwise becomes emancipated, whichever shall first occur, at which time the Husband’s obligation to pay support for that child shall terminate.” With regard to educational training, the agreement provided as follows:
[T]he Husband agrees to pay and be solely responsible for the secular education and training of the children, said education and training to include a college education, postgraduate education, and professional training.... The Wife and Husband shall have joint control as to the selection of the educational institution the children shall attend and the best interest of the children, including their readiness, ability and motivation to secure the benefits of the education, shall be the prime consideration. The Husband agrees to pay for the costs of the education and training notwithstanding the fact that the children attain the age of eighteen (18).
In January 1990, after consulting with both parents, Joshua and Jason Diamond enrolled at Hunter College in New York. The children shared an apartment with another roommate, splitting all expenses three ways. The children received benefits *526 from the Veterans Administration (VA) to help pay for the costs of attending college; however, the costs exceeded the amount of the benefits.
In 1990, Wife filed a motion to enforce the property settlement agreement, seeking to require Husband to pay all of the children’s education costs. Wife subsequently filed two amended motions. After Wife filed her second amended motion to enforce the settlement agreement, the matter was referred to a general master, who requested memoranda of law from both parties. Without conducting a further hearing, the general master concluded that Husband’s obligation under the property settlement agreement with respect to the children’s college education included “tuition, books, special course fees or other mandatory fees, on campus housing or its equivalent cost for the school term if no on-campus housing is available and a food plan or its equivalent if no food plan is available.”
Husband filed exceptions to the general master’s report. The trial court granted the Husband’s exceptions and set aside the general master’s report. The trial court found that the parties did not stipulate to the general master making her report solely on the basis of the submitted memoran-da of law; therefore Husband’s due process rights were violated. The court further found that “no evidence supports the factual findings and recommendations made in said report.” The trial court ordered the general master to hold an eviden-tiary hearing on the matter.
Wife testified at the hearing that Husband never discussed the VA benefits when drafting the settlement agreement. Wife did not discover that such benefits were available until 1988 when her sons were approaching college age. Wife stated that each child receives $1,600 in VA benefits per semester. At the time of the hearing, the tuition at Hunter College was $750 per semester; however, it was being raised to $1,000 per semester the following fall. Each son is responsible for one third of the $650 rent, and Joshua Diamond testified that he spends approximately $400 per month on food. According to Joshua, books cost anywhere from $150 to $200 per semester. Both boys had worked the previous summer, earning approximately $2,200 apiece.
Husband testified that he had advanced his sons $1,500 toward the first semester because they had not yet received the VA benefits. Husband stated that both he and Wife were represented by independent counsel at the time they signed the settlement agreement. When asked why he was willing to put into writing his intention to pay for the post high school education of the children, Husband responded, “One of the main reasons was because I had the VA — the children had the VA benefits which I knew that would come to them since they were born, and that it would help defray the cost of education.”
On September 13, 1990, the general master issued her second report, finding that the instant case “was predicated upon a definition of what college costs mean.” Relying on factors set forth in Zakarin v. Zakarin, 565 So.2d 790 (Fla. 3d DCA 1990), the general master found that “[i]n providing payment for each child’s higher education the costs thereof includes tuition, books, fees and attendant campus or home living expenses.” Accordingly, the general master ordered Husband to pay $278 per month per child for the eight months a year that his children were in school retroactive to January 1990.
Husband again filed exceptions to the general master’s report, arguing that the provisions of the property settlement agreement were clear and unambiguous. Even if the provisions were ambiguous, Husband argued that the general master erred in interpreting them based upon a lack of testimony at the hearing. Husband essentially maintained that his support obligation ended when his sons reached the age of eighteen. The trial court conducted a hearing on Husband’s exceptions and found that “the General Master ha[d] misconceived the legal effect of the evidence in concluding that Respondent/Husband’s agreement to pay for the costs of the children’s college education also obligate[d] him to pay the living expenses of the children, who are now adults.” Finding that *527 the general master had erred as a matter of law, the trial court disapproved the master’s report and concluded that Husband shall only be responsible for the following expenses: (1) college tuition; (2) books; (3) supplies required by course in which the children are enrolled; and (4) other fees and costs charged by the college in which the children are enrolled. The instant appeal followed.
As Husband asserts, Zakarin does not demonstrate that the trial court erred in its interpretation of the provisions of the instant settlement agreement. The instant case does not involve the payment of college expenses by a noncustodial parent for which that parent is still paying support. We believe, however, that the principles set forth in Zakarin are illustrative. It is clear that at the time of dissolution, both parents recognized that they wanted to furnish their children with a college education, a virtual necessity for economic survival in today’s society. While the record is silent as to Wife’s present occupation, Husband, being a podiatrist, evidently has had the benefits of higher education.
Husband argues that had the parties intended that he pay for living expenses past the age of eighteen, they would not have limited child support. It is interesting to note, however, that the paragraph addressing educational training specifically provides that Husband will pay for such costs notwithstanding the fact that his sons attain the age of eighteen. Husband argues that there was no evidence by the parties to give any special meaning to the phrase “cost of education”; therefore the general master had no evidentiary foundation for inserting into the agreement any requirement that Husband pay for the living expenses of his adult sons. . While Husband argues that such expenses clearly are not envisioned by that phrase, room and board costs can often dwarf the costs of tuition, books, and fees, especially at a state university. When both undergraduate and graduate students apply for student loans, it goes without saying that such monies will be used to subsidize their living expenses. Thus, we believe that it is generally recognized that such expenses are factored into the cost of higher education.
While Husband maintains that his contribution should be limited to the amount of VA benefits, there is no mention of those benefits in the agreement. Husband argues that had he agreed to pay for room and board, that intention clearly would have been set forth in the agreement. The converse is equally true. Had Husband wished to limit his contribution to tuition and related costs, such language could have been included to make that intention clear. Instead the parties used broad terms, i.e., “costs of education and training,” when delineating Husband’s responsibilities.
Based upon the above reasoning, we conclude that Husband obligated himself to pay all reasonable costs associated with his sons’ college education, including room and board. It seems clear that in that instant case, the children are being penalized because their parents no longer live together. The general master’s report was well founded and we expressly find that the general master’s calculation of the children’s educational costs, including their living expenses, was both reasonable and supported by the record, thereby eliminating the need for an additional evidentiary hearing.
GLICKSTEIN, C.J., ANSTEAD, J., and HOY, JOHN J., Associate Judge, concur.