*491 OPINION OF THE COURT
Gerard E. Maney, J.
The petitioner (Mother) seeks to enforce a support provision contained in the judgment of divorce dated April 13, 1979 which incorporated but did not merge an oral stipulation and agreement entered into in court by the parties who were both represented by counsel. The stipulation provided that the respondent (Father) agrees that he will assume the full, complete and sole obligation for the tuition, room and board and expenses for his son’s college education, the choice of the college to be attended by the son or the school to be attended by the son shall be arrived at after consultation by the Father with the son.
The Father filed a cross petition alleging that there was an abandonment by the son of his Father and due to the abandonment the Father is relieved of any obligation for the payment of child support or college expenses.
Both the Mother and Father testified together with their son, William V. Dzierson, III, born on February 3, 1978.
The parties were divorced in April of 1979 with the mother having sole custody and the Father having visitation. During their son’s early years the visitation was regular with the Father visiting frequently when he came to Albany on business trips and the son visited his Father on weekends and for vacations. In December of 1995 the son told the Father that he was gay. The son testified that his Father said to him "he didn’t know how he would be part of his Son’s life and how much of his life”. The Father testified that he told his son he couldn’t accept that lifestyle but he didn’t say he would not see his son. Furthermore, the Father testified that between the declaration of homosexuality by the son and the end of May 1996, his son refused to speak with him and would not see him.
Based on the credible testimony it is the determination of the court that the Father has not been able to establish that there was an abandonment of the Father by the son. His cross petition is, therefore, dismissed on the merits.
While a parent has a statutory obligation to support his or her child to their 21st birthday, such obligation can be terminated where a child voluntarily abandons the noncustodial parent by refusing all contacts or visitation, without cause. (Radin v Radin, 209 AD2d 396, citing Alice C. v Bernard G.C., 193 AD2d 97, 109.) "In contrast, where it is the parent who causes a breakdown in communication with his child, or has *492 made no serious effort to contact the child and exercise his visitation rights, the child will not be deemed to have abandoned the parent.” (Alice C. v Bernard G.C., 193 AD2d, at 109.)
As in Radin (supra), where the claim is that the child abandoned the parent by not returning all phone calls and not contacting him as frequently as the parent would have liked, the facts here merely indicate a reluctance of the son to have a normal relationship with Father, not an abandonment of that relationship.
With the rejection of Father’s claim of abandonment by the son, the court must consider whether the Father is solely responsible for the tuition, room and board, and expenses for his son’s college education. The Mother and son testified that in the fall of 1995 they had visited several colleges and arranged a meeting with the Father to discuss college education. At this meeting the son told the Father that he would be interested in Emerson College. Both Mother and son testified that the Father replied, "we’ll see” when the son expressed his interest in going to Emerson. The Father testified, "that the Son had input into the schools that he felt strongly about. He voiced his opinion.”
There was a second meeting in 1995 concerning colleges in which the son and Mother said that the son was going to apply to Emerson. The Father’s reply was "we’ll have to see.” On May 28, 1996 the son told the Father that he was accepted at Emerson. The Father also told the son that Emerson was a very expensive school, out of his reach, and that he was not in favor of the son going.
It is long since well settled that while a parent is not legally obligated to provide their child with a college education, as it is not considered a "necessary”, a parent may be required to finance the costs of higher education if special circumstances exist, or if said parent freely assumes that duty under contract. It is the interpretation of such a contract, the separation agreement, that is the focus here.
What is clear from the separation agreement is that Father bargained for and received the obligation to fully and solely finance his son’s college education, whatever the cost. There were no financial limitations placed on the college choice, per se, only a somewhat vague reference to a "consultation” between Father and son regarding the choice.
The issue of whether the Father is obligated to assume the sole obligation for his son’s college tuition, room, board and ex *493 penses rests solely upon the court’s determination whether the choice of the college to be attended by son was arrived at after "consultation” by the Father with the son, pursuant to the separation agreement incorporated but not merged with the parents’ judgement of divorce. If that question is answered in the affirmative, that there was a consultation, then the next question is how much does Father owe, given that son has already begun his college studies at Emerson.
While the facts presented here are somewhat unique, there are several cases that provide significant guidance. The Third Department case, Matter of Hartle v Cobane (228 AD2d 756), is instructive. In Hartle, the parents had a separation agreement that obligated them to contribute to the college expenses of the children provided each approved of the college, course of study, and living arrangements. The father contended that the mother’s petition seeking his contribution toward college expenses should have been dismissed because his approval was not sought for one child’s decision to attend the University of Hartford. The Court held that, given the agreement’s silence on the method of expressing approval, the father’s failure to unequivocally disapprove of his daughter’s college choice, along with the fact that he drove her to the school in the fall, signified his acquiescence and implicit approval of the daughter’s decision. (Supra, at 757.)
In Matter of Harp v McCann (97 AD2d 868) the Third Department addressed a similar set of facts. In Harp, the separation agreement stated that the parties were to share equally, provided that husband consent on the choice of college, and that he pay any extraordinary and necessary medical bills not covered by insurance, provided that he was consulted prior to the care. In a dispute over college costs and the propriety of certain medical care for the children, the Third Department held that the petitioner, seeking payment for these expenses under the separation agreement, made out a prima facie case on both accounts. (Supra, at 869.) With respect to the medical expenses, the applicable provision of the agreement only required that respondent be "consulted” and not object to the proposed treatment. Respondent knew about the treatment had by his son and, in fact, drove his son to the dentist without objection. This was held to be substantial compliance with the contractual requirements of consultation.
With respect to the choice of college and the respondent’s contractual right to consent or not consent thereto, the Third Department found that, at the very least, respondent gave *494 tacit approval of his son’s college choice. (Matter of Harp v McCann, supra, at 869.) The father failed to provide any express consent or disapproval of his son’s college choice. Indeed, he even congratulated his son upon admission to the son’s college choice.
When viewed in light of Hartle (supra) and Harp (supra), the present circumstances dictate a similar finding. As in these cases, the agreement here does not require that a certain number of or quality of consultations occur, only that the choice of the college is to be arrived at after such consultation by the Father with his son.
Here, while it is unclear exactly how many times and to what degree Father engaged son in consultations over his college choice, consultations did, in fact, occur. Although the number and nature of those consultations may not have been as great as in a typical intact family, they were existent nonetheless.
This court is not swayed by the Father’s comparisons to "consultations” frequently had by doctors or as between lawyer and client. Again, while such consultations might typically be more extensive or involved than in this case, there is no definition of the word that requires such frequency or detail. Indeed, a consultation truly requires only one discussion. Furthermore, "consultation” implies at least a degree of symbiosis or mutuality of input. It does not imply or connote an inherent veto power in either party. By these standards and meanings, Father clearly consulted with son here.
Equally unavailing is the argument that no one expected son to be admitted to Emerson. The fact is that he was admitted. Even if Father had not been involved in the college selection process up to that point, it was incumbent on Father, under the separation agreement, and as the adult in the relationship, to take the lead on the consultation process. Indeed, the separation agreement, in apparent recognition of this fact and the fact that Father voluntarily assumed the sole duty to finance son’s college education, states that consultation is to be had by the defendant (Father) with the son. As in Hartle (supra) and Harp (supra), Father had the opportunity, if not the obligation, to take a proactive position. Instead, Father acquiesced, and failed to become intimately involved. One can only wonder at Father’s true motivation for this tactic. He now asks that his son be forced to pay the penally for such failure. This court will not impose such a penalty.
Mother’s petition seeking enforcement of the aforementioned provision for payment of college tuition, room, board and ex *495 penses is hereby granted. Given that son had already matriculated at Emerson College for the 1996-1997 school year, and that Mother has expended monies to pay for the costs associated therewith, a reimbursement of Mother by Father is ordered within 90 days of the entry of this decision and order.
With respect to son’s sophomore, junior and senior years at Emerson, or other undergraduate institution to which son may transfer, Mother is ordered to have the college send Father a duplicate bill and present the tuition statement to Father immediately upon receipt. Father is ordered to pay to Emerson College or other college the full amount indicated thereon, less any tuition credits received by Mother or Father, or credits to which either is entitled but has not actually received, less any scholarship monies actually received by son to the extent said scholarship money is not indicated as a credit on the total bill, less any gifts received by son by any individual, including, for example, petitioner (Mother) or respondent’s (Father) mother, which gifts are so dedicated for the undergraduate college education of son, within the time allotted by the college for remittance, unless said tuition statement amount is covered by financial aid already arranged by Father for payment of said statement or covered by a college-approved deferred payment plan, said plan as defined by said college.
With respect to room and board expenses incurred by son while in attendance at college, irrespective of whether son is living in college-furnished or self-furnished (off-campus) quarters, and irrespective of whether son is on a college meal plan or furnishing his own meals, Father is only liable for payment of said expenses to the extent of the college charge for basic room accommodations and to the extent of the college charge for the meal plan selected by son for the fall 1996 semester, or its equivalent then existing. Should son opt for off-campus housing and/or off-campus meals, Father is ordered to pay the then financial equivalent of said room and board plans noted above to Mother within 60 days after the start of the semester at issue.
Mother’s claim for those living expenses incurred by son while at college, in addition to the tuition, room, board, and fees contained on the tuition statements received in evidence, was not sufficiently documented and, as such, Mother has failed to meet her burden to prove that these expenditures are properly considered college "expenses” under the separation agreement incorporated into the judgment of divorce. While Father bargained for and assumed the obligation to pay for all *496 of son’s college tuition, room, board, and expenses, Mother is not excused from her burden of proving the existence and reasonableness of these expenses.