# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

**FILED**

**June 16, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

| | | |
|---|---|---|
| **GARY CHRIS VICK, SR.,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Benton Chancery No. 6654 |
| | ) | |
| **v.** | ) | |
| | ) | Appeal No. 02A01-9802-CH-00051 |
| **LINDA KAY (FLOYD) VICK,** | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

### APPEAL FROM THE CHANCERY COURT OF BENTON COUNTY
### AT CAMDEN, TENNESSEE

### THE HONORABLE WALTON WEST, CHANCELLOR

For the Plaintiff/Appellant:          For the Defendant/Appellee:

L. L. Harrell, Jr.                    W. Brown Hawley, II
Trenton, Tennesseee             Paris, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This is a contempt action brought to enforce a provision in a marital dissolution agreement governing the father's obligation to pay college expenses for the parties' daughter. The trial court ordered the father to pay for the entire cost of tuition, room and board at the private university. We affirm.

Gary Chris Vick ("Father") and Linda Kay Floyd Vick (now Dykstra) ("Mother") were divorced on July 21, 1987. The parties entered into a Marital Dissolution Agreement ("MDA"), which was incorporated into the divorce decree. Mother received custody of the parties' four children. The MDA provided that, "As additonal [sic] consideration for this agreement, [Father] agrees to be responsible for the children's tuition, room and board for college education if they choose to go for a four year degree." The MDA contained no provision specifying who would make the decision as to which college the child would attend, or whether Father would be consulted as to the choice of college.

The parties' daughter, Sara, chose to attend Union University, a private college located in Jackson, Tennessee. The record reflects that, before the fall semester, Sara visited her father to discuss her choice to attend Union University. In this conversation, Father told Sara that he could not afford to send her to a private university. Despite this conversation, Sara enrolled and began attending Union University. The bill for the fall semester from Union University was forwarded to Father. It included the following charges: Bookstore charges, $155.09; Fall Tuition, $3840; General Lab Fees, $25; Freshman Orientation Fees, $55; Student Services Fee UG & Evng, $95; Fall Housing Rent, $725; Fall Meal Ticket, $715; Sales Tax, $62.56; and Women's Dorm Dues, $5. The total bill was $5477.65.

Upon receipt of the fall semester bill, Father sent a letter to Sara notifying her that he had paid $2532, minus the $250 that he had already given to her. This amount was equal to the amount that Father had determined Sara's expenses would be at a state-funded school. Father arrived at this figure by contacting the University of Tennessee at Martin, a nearby state-supported university. A balance of $3502 remained, which Mother charged to a credit card in order for Sara to continue attending the university.

Mother then filed a motion requesting the trial court to enforce the MDA provision and require Father to pay Sara's college expenses. Father argued in response that his obligation under the MDA should be limited to the cost of a comparable state-funded school.

At the bench trial, Mother asserted that Father had a contractual obligation to pay Sara's expenses at Union University. Father testified that he and Sara were estranged, but said that they had exchanged letters and acknowledged that Sara had visited him to discuss her choice of college and the college expenses. Father said that he told Sara that he could not afford to pay the tuition and expenses for Union University, but that her decision to attend Union was unchanged. He asserted that under the MDA he was obligated only to pay expenses equivalent to a state-funded university.

At the conclusion of the bench trial, the trial court found that under the MDA the child had the option of choosing a private or state university, and refused to rewrite the MDA to limit Father's obligation. Father was ordered to pay the entire cost of the tuition and room and board at Union University. Because he had already paid $2,532, judgment was entered for the remaining balance of $2970.56 plus interest. Father appealed to this Court.

On appeal, Father argues that the trial court erred in ordering him to pay college expenses for the parties' daughter where she is over the age of 18 years and has voluntarily alienated herself from him. Father also argues that the trial court erred in ordering him to pay the tuition and room and board of the daughter at a private university rather than to limit payment to the tuition and room and board at a state university.

Because this case was heard in a bench trial, we review the trial court's decision *de novo*, with a presumption of correctness in the trial court's findings of fact. No presumption of correctness attaches to the trial court's conclusions of law. *See* Tenn. R. App. P. 13(d); ***Hansel v. Hansel***, 939 S.W.2d 110, 111 (Tenn. App. 1996).

Father first argues that he should be relieved from his obligation under the MDA to pay for Sara's college expenses because she voluntarily alienated herself from Father. At trial, Father introduced evidence, as factual background, that he currently has no relationship with his daughter. He argued that he should not be obligated to pay for his daughter's college expenses where he has no input as to which college she attends. On appeal, however, he argues that because he has no relationship with his daughter, he has no obligation to pay for her college expenses. While Father testified that Sara had alienated herself from him, the record does not indicate that he argued to the trial court that the fact that his child was alienated from him abrogated his responsibility to pay for her college expenses. Consequently, the trial court made no finding as to whether Sara's alienation from her father absolved him of his financial responsibilities. Because this issue was not raised to

2

the trial court, Father cannot now raise it on appeal. ***See Simpson v. Frontier Community Credit Union***, 810 S.W.2d 147, 153 (Tenn. 1991).

Second, Father argues that if he does have an obligation under the MDA to pay for his daughter's college expenses, that obligation should be limited to the cost of a state university. Father asserts that the cost of Union University, the private university, is approximately twice that of a public university, such as The University of Tennessee at Martin, and that he cannot afford to send his daughter to a private university.

Mother argues that this is a simple contract dispute and that the contract, the MDA, should be read as written, requiring Father to pay college expenses regardless of which college the child attends. Wife states that there were no caps in the MDA as to the amount Father would be obligated to pay. The trial court found Father to be responsible for the entire tuition, room and board at the private university. The trial court found that the daughter had the option of choosing which school to attend and that the daughter's choice was not unreasonable.

In ***Penland v. Penland***, 521 S.W.2d 222, 224 (Tenn. 1975), the Tennessee Supreme Court found that an agreement that imposes a legal obligation on a parent to pay for college expenses beyond a child's minority is "a contractual agreement . . . independent of the legal duty of child support." Such an agreement does not lose its contractual nature even though incorporated into a final decree of divorce. ***See id.*** Therefore, the MDA in this case must be interpreted as an enforceable contract between the parties. "The interpretation of a written agreement is a matter of law and not of fact. Therefore, our scope of review is *de novo* on the record with no presumption of correctness of the trial court's conclusions of law." ***Rainey v. Stansell***, 836 S.W.2d 117, 118 (Tenn. App. 1992) (citations omitted); ***see also*** Tenn. R. App. P. 13(d).

The interpretation of contracts is governed by well established principles, the most important of which is to ascertain the intention of the parties from a consideration of the whole contract and to give effect to that intention consistent with legal principles. ***See Rainey***, 836 S.W.2d at 118. The words of the contract should be given their usual, natural and ordinary meaning. ***See id.*** at 119. "The court, at arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written." ***Id.***

Courts have a duty to give words their ordinary meaning where there is no ambiguity in the

3

contract. *See Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. App. 1995). A contract will be enforced as written even though it contains terms that later appear harsh and unjust. *See Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706, 708 (Tenn. App. 1992).

In this case, the MDA clearly provides that Father "be responsible for . . . tuition, room and board for college education." Father maintains that when he entered into the agreement ten years ago, he "felt like I obligated to . . . fund a state supported institution," and thus should not be required to pay more than the tuition and room and board at a state supported university. In essence, Father is requesting that the term "college education" be interpreted to mean "public college education."

Father's argument here is similar to that addressed in a recent case, *Cagle v. Cagle*, No. 02A01-9701-CH-00265, 1998 WL 802019 (Tenn. App. Nov. 18, 1998). The parties in *Cagle* entered into a marital dissolution agreement providing that the father would pay for "his son's college expenses," and that the father's interests and desires would be considered in the son's college education. *See id.* at *1. The father argued that the parties intended the provision to cover college expenses at a public university, but not at a private school. *See id.* at *2. After two years at a state supported institution, the son transferred to a private school without first discussing the move with his father. *See id.* at *1. The trial court ordered the father to pay for the son's expenses at the private school. *See id.* at *2. The Court of Appeals affirmed, noting that the father had had the opportunity to draft the agreement so that he was only responsible for college expenses at a public institution, but failed to do so. *See id.* at *3. The appellate court found that the evidence did not preponderate against the trial court's finding that the son's choice of college was reasonable and covered by the provision in the marital dissolution agreement. *See id.* at *6.

Other jurisdictions have considered divorce settlement agreements obligating one parent to pay for college expenses. Where there are no limitations stated in the agreement, some courts have refused to limit the parent's obligation. In *Douglas v. Hammett*, 507 S.E.2d 98, 99 (Va. App. 1998), a separation agreement provided that the father would "pay the expenses of a college education for the child." The court found the language unambiguous. *See id.* at 101. The court noted that the parties did not specify what expenses were included by the contract language, nor did they limit the father's obligation in any way. *See id.* at 102. Consequently, the court concluded that the father was obligated to pay those expenses not covered by scholarships. *See id.* Another Virginia case, *Jones*

4

*v. Jones*, 450 S.E.2d 762, 762 (Va. App. 1994), interpreted a separation agreement in which the father was to pay 60% and the mother was to pay 40% of college education costs. The agreement provided that, "Both parents shall agree on the college of attendance . . . ." *Id.* The court interpreted this language as giving the father veto power, and stressed that it was not at liberty to impose limitations on that veto right if there were no limitations in the contract. *See id.* at 764-65. Because the father had not agreed on the children's selected schools, the court determined that the agreement did not obligate him to pay the expenses. *See id.* at 765.

Likewise, in *Bender v. Bender*, 715 A.2d 1199 (Pa. Super. Ct. 1998), the father agreed to be responsible for college expenses. The parties' child chose a school with yearly tuition of $14,000 after scholarships. *See id.* at 1201. The father argued that he should not be required to pay the college expenses because the child did not discuss the cost of the school with him and the cost was unreasonable. *See id.* at 1202. The *Bender* court found that "[s]ince the [agreement] does not empower [the father] with decision-making authority regarding his children's choice of college, this argument is without foundation." *Id.* at 1203. The court implicitly addressed the reasonableness of the school expenses, noting that the father "is a man of substantial financial standing who would be capable of paying the tuition proposed." *Id.*

In *Dzierson v. Dzierson*, 661 N.Y.S.2d 779 (Fam. Ct. Jun. 26, 1997), the father agreed in an oral stipulation and agreement entered into in court, which was incorporated in the parties' divorce decree, to pay college expenses for the child, provided that the child's choice of college would be made after consultation with the father. The child told his father that he wanted to attend Emerson, despite the father's statement that the school was financially out of his reach. *See id.* Because there were no financial limits in the agreement, the court found that the father had obligated himself for his son's college education "whatever the cost." *Id.* at 781. The court found that the number and nature of the consultations were adequate even though they "may not have been as great as in a typical intact family," and that the son's obligation to consult the father had been met. *Id.* at 782. Therefore, the court ordered the father to pay the full amount of tuition. *See id.*

Two Florida cases examined property settlement agreements that contained agreements to pay for college expenses with no financial limitations on the parents' obligation. In both cases, the courts found that the parents were obligated for the full cost of the expenses, subject to a determination of the reasonableness of the choice of school. In *Carlton v. Carlton*, 670 So. 2d 1129

(Fla. App. 1996), a father who was earning $27,000 per year agreed to pay one-half of his child's college expenses. The daughter chose a school that cost $18,000 per year. *See id.* at 1130. The court held that ability to pay should be considered when determining reasonableness where the parent has no real input concerning the choice of school, and remanded for a determination of this issue. *See id.* at 1130-31. The court stated, "[A] tuition amount need not be outrageous in order to be unreasonable. If parents cannot pay what one may consider a modest tuition, that amount is still unreasonable as to them." *Id.* at 1130. In **Reynolds v. Diamond**, 605 So. 2d 525 (Fla. App. 1992), the father was to be solely responsible for college education costs. He and the mother had joint control as to the selection of the college. *See id.* at 525. The court noted that the parties could have limited the father's obligation in the agreement, but since they chose broad terms, the father was obligated to pay all reasonable costs. *See id.* at 527. The court discussed the father's occupation as a podiatrist and concluded that he could afford the expenses, implicitly finding that the cost of the school was reasonable under the circumstances. *See id.*

Two Illinois cases considering a divorced parent's contractual obligation to pay college expenses discussed the public policy reasons for their decisions. **Gaddis v. Gaddis**, 314 N.E.2d 627 (Ill. App. 1974), involved a settlement agreement in which the father promised to pay college expenses, with no restrictions on the children's choice of college. Because there was no requirement in the agreement that the father be consulted on the choice of college, the court rejected the father's argument that he could select reasonable educational facilities. *See id.* at 630. The court ordered the father to pay the cost of the child's chosen school, reasoning that public policy required enforcement according to the terms of the agreement: "If the law were to tolerate such modifications, nothing could prevent a party from promising twice or three times his annual income . . . for the children's education to soften resistance to obtaining a divorce" and then scale down these promises later. *Id.* at 632.

The reasoning of **In re Marriage of Schmidt**, 684 N.E.2d 1355 (Ill. App. 1997), *appeal denied*, **Schmidt v. Schmidt**, 690 N.E.2d 1387 (Ill. Feb. 4, 1998) is persuasive. The marital dissolution agreement provided that the father would pay one-half of college education expenses. Neither the daughter nor the mother consulted him about the daughter's choice of a $17,000 per year private university. *See id.* at 1358. Although the father stated that he could not afford the school, the court noted that the agreement did not refer to a particular school nor did it place a financial limit

6

on the father's obligation. *See id.* at 1360. The court found that a reasonable price was implied where a contract was silent as to price. *See id.* at 1361. It determined that the school's cost was unreasonable based on the father's financial means because the expenses came close to exceeding his income and he had no money saved. *See id.* at 1363. The court looked at the costs of equivalent public schools, which were about $6000 per year. *See id.* at 1358. The father was ordered to pay one-half of the educational expenses at a state school, or $4000 per year. *See id.* at 1364. The court reasoned,

> There is no evidence it was the intent of the parties when they entered into the agreement for college expenses that Emily could attend any college, regardless of cost. This agreement took place 10 years before their child was ready for college. If the parties had not been divorced, they likely would have discussed the best college situation for Emily and taken into consideration their income, Emily's interests and aptitudes, and the costs of the various schools Emily was interested in attending. One of the spouses would not have simply gone out with Emily and chosen a school without input from the other parent other than asking him to write a tuition check. The only way to determine a reasonable price would be to use the same factors two married parents would use.

*Id.* at 1362.

In *Cagle*, this Court found that the term "college" used in the MDA was not limited to publicly-funded colleges. *Cagle*, 1998 WL 802019, at *4. While there was some discussion of the cost of the private college chosen by the parties' son as compared to the cost of the publicly-funded university from which the son transferred, the father in *Cagle* acknowledged that the cost of the private college was comparable to the expenses he had paid at the public university. *See id.* at *5. The father's primary complaint was that the son did not take into account his father's wishes in making his decision to transfer. *See id.* at *6. The Court concluded that the father would not be relieved of his obligation under the MDA on this basis. *See id.*

In this case, the MDA has no requirement that Father be consulted, no indication in the language that "college" was limited to publicly-funded institutions, and no limit on the amount of expenses to which father was obligated. Unlike *Cagle*, the evidence indicates a significant difference in cost between the private college chosen by Sara and the publicly-funded institution contemplated by Father.

Father argues on appeal that the MDA should be interpreted to limit his obligation to the cost of a publicly-funded college. However, the only evidence supporting this contention is Father's testimony that he told his daughter that when he signed the MDA, "what I felt like I obligated to do

ten years ago is to fund a state supported institution." Mother disputed any such understanding, and Sara did not testify. The terms of the contract between the parties cannot be modified by the unilateral understanding of one party to the contract. *See Balderacchi v. Ruth*, 256 S.W.2d 390, 391 (Tenn. App. 1952). As in *Cagle*, there was not mutual understanding between Mother and Father at the time they entered into the MDA that the term "college" should be limited to "public college." *Cagle*, 1998 WL 802019, at *4. As did this Court in *Cagle*, we must conclude that the term "college" as used in this MDA is not limited to "public college." *Id*.

Father testified in this case that he agreed with his lawyer's statement that he should not be forced to pay "where you have absolutely no say-so" and that the choice of college should be "mutually acceptable to the parties." However, the MDA in this case, unlike *Cagle*, has no affirmative requirement that Father be consulted as to the choice of college. Sara consulted with Father about her choice of college, but disregarded Father's concerns. These actions do not appear to be in breach of the MDA.

As noted above, some courts would end the inquiry at this point, enforcing the MDA as written, with no limit on the parent's obligation to pay. *See*, *e.g.*, *Douglas v. Hammett*, 507 S.E.2d at 102. The majority of courts considering this issue, however, will determine if the choice of college is reasonable, considering the child's needs and the parent's ability to pay. *See*, *e.g.*, *In re Marriage of Schmidt*, 684 N.E.2d at 1362. This is the approach utilized by the trial court in this case and it is consistent with the contract's implied condition of reasonableness. *See Moore v. Moore*, 603 S.W.2d 736, 739 (Tenn. App. 1980). Therefore, we adopt this approach on appeal.[1]

---

[1] We note that a parent may have objections to a child's choice of college which are not financial. This case involves only financial objections, so we address the reasonableness of the choice of college only from a financial standpoint.

In this case, the trial court found that the cost of Union University in this case was not unreasonable:

> The reason I did allow the evidence as to his income, as I say, I suppose if one went to a school that the Court just deemed to be totally prohibited [sic]--and I'm not sure what even that might be. That's not really before the Court because I don't view these figures that I'm hearing today as being totally prohibited [sic] or unreasonable. But, you know, if one were to take off and go to Harvard and have to pay twenty-five or thirty thousand dollars a year, I may--I'm not saying what I would do, but I may say well, that's--that goes over beyond what the parties maybe had anticipated. But I don't think I can do it under the facts here at hand.

Considering the evidence presented at trial regarding the cost of the college selected by Sara and Father's annual income,[2] we cannot conclude that the evidence preponderates against the trial court's factual finding that the daughter's choice, Union University, is a financially reasonable one. The trial court's decision is affirmed on this issue.

In sum, we affirm the trial court's finding that the provision in the MDA is enforceable. We affirm the trial court's decision that the word "college" in the MDA should not be limited to refer only to public universities. We also affirm the trial court's determination that the cost of Union University is reasonable under the circumstances and that Father is obligated under the MDA to pay the entire cost of tuition, room and board at Union University.

The decision of the trial court is affirmed. Costs are taxed to Appellant, for which execution may issue if necessary.

_____
**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**ALAN E. HIGHERS, J.**

---

[2] Father is employed by the Tennessee Valley Authority, and indicated at trial that his employer has a "non-disclosure" policy regarding employees' compensation. Both the trial court and this Court reviewed his income but decline to include the figures in this Opinion in deference to the employer's policy.