IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 17, 2000 Session

## REBECCA RENEE JAMES WEAVER COOPER v. PORTER HALL COOPER

**Direct Appeal from the Chancery Court for Chester County**
**No. 6957; The Honorable Joe C. Morris, Chancellor**

---

**No. W1999-01450-COA-R3-CV - Filed January 10, 2001**

---

This appeal arises from a dispute over a term in a Property Settlement Agreement that obligated Mr. Cooper to pay for his son's college education. Ms. Cooper sought reimbursement for various expenses totaling over $16,000.00 associated with her son's first year of college at Mississippi State University. Mr. Cooper argues that he should be liable only for the cost of tuition, fees, and books. For the following reasons, we affirm as modified and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

J. Michael Fletcher, for Appellant

Everett B. Gibson, for Appellee

### OPINION

### Facts and Procedural History

The parties, Rebecca Renee James Weaver Cooper ("Ms. Cooper"), and Porter Hall Cooper ("Mr. Cooper"), were divorced by a final decree on October 27, 1987. At the time of the divorce, the parties also entered into a Property Settlement Agreement. Under the terms of the Property Settlement Agreement, Mr. Cooper agreed "[t]hat the Husband shall pay for PATRICK'S college or education needed after high school."

Patrick Cooper ("Patrick"), the parties' son, began attending Mississippi State University in the Fall of 1998. There is a point of contention regarding whether Ms. Cooper ever made a demand

on Mr. Cooper to pay for Patrick's college expenses before she filed the contempt action. Mr. Cooper alleged that no specific demand was made upon him for payment of Patrick's college expenses until the petition seeking to hold him in contempt was filed. In contrast, Ms. Cooper avers that she wrote Mr. Cooper a letter on March 21, 1998, to request that Mr. Cooper reimburse her for Patrick's college admission fee.

Ms. Cooper brought a petition for contempt against Mr. Cooper on July 15, 1998. The hearing was held on August 12, 1999, after a full year of college expenses had been incurred. At the hearing, Ms. Cooper sought reimbursement from Mr. Cooper for $16,080.25, asserting that Mr. Cooper was obligated to pay these expenses due to the term "[t]hat the Husband shall pay for PATRICK's college or education needed after high school" in the Property Settlement Agreement. Ms. Cooper submitted a detailed, hand-written summary of Patrick's educational expenses for which she was seeking reimbursement. In addition to the normal expenses associated with college, such as tuition, fees, and books, Ms. Cooper sought reimbursement for several other expenses, including the following:

| | |
|---|---|
| Kappa Sigma Fraternity dues | approx. $2,500.00 |
| Attorney's fees | $1,000.00 |
| Automobile expenses, including parking tickets | approx. $280.00 |
| Medical and Dental insurance | approx. $700.00 |
| Cable television | approx. $100.00 |
| Cash | approx. $250.00 |
| Telephone hook-up charges | approx. $150.00 |
| Payment for "Mossy Oak" | $236.00 |
| Ducks Unlimited Dinner | $40.00 |
| Football Tickets | $81.00 |
| Kappa Sigma Mother's Club | $50.00 |
| Clothing Expense | approx. $360.00 |
| Housing expenses in excess of Mississippi State University dormitory charges | approx. $1,000.00 |

The total amount of Patrick's alleged expenses for his first year of college was $16,080.25. Patrick obtained grants for the 1998-1999 academic year in the amount of $4,340.00, for which the chancellor credited Mr. Cooper in determining the amount that he was liable for Patrick's college expenses.

Mr. Cooper also filed a Petition to Modify Property Settlement Agreement and Final Decree of Divorce wherein he asserted the availability of a testamentary trust established by his mother, which directed her trustees to pay for Patrick's college expenses. Mr. Cooper argued that he should be responsible only for Patrick's college expenses not covered by the testamentary trust. The court below denied Mr. Cooper's petition to modify the final divorce decree to mandate that payment of Patrick's college expenses be paid first out of the testamentary trust.

The chancellor found that the reasonable cost of Patrick's college education was $14,000.00 per academic year. Moreover, the chancellor gave Mr. Cooper credit for the $4,340.00 worth of grants that Patrick received, making Mr. Cooper liable for $9,660.00 for the 1998-1999 academic year. The court directed the parties to submit proposed Findings of Fact and Conclusions of Law. The chancellor then adopted the proposed Findings submitted by Ms. Cooper. Mr. Cooper filed a Motion to Alter or Amend Judgment on November 10, 1999. The chancellor denied the motion except to find specifically that Mr. Cooper was not in willful contempt. Mr. Cooper filed a Notice of Appeal on November 19, 1999.

Mr. Cooper's issues on appeal, as we perceive them, are twofold. 1) Whether the trial court erred in its interpretation of the expenses for "college or education needed after high school," and whether expenses for "college or education needed after high school" include insurance, ordinary living expenses, and discretionary expenses. 2) Whether the trial court erred in denying Appellant's motion to provide payment for Patrick's college expenses from the testamentary trust established by Mr. Cooper's mother.

**Standard of Review**

Because this case was heard by way of a bench trial, we review the trial court's decision *de novo*, with a presumption of correctness in the trial court's findings of fact. No presumption of correctness attaches to the trial court's conclusions of law. See TENN. R. APP. P. 13(d); Hansel v. Hansel, 939 S.W.2d 110, 111 (Tenn. Ct. App. 1996).

**Law and Analysis**

Mr. Cooper argues that he should be only liable for the cost of Patrick's tuition, fees, and books. Furthermore, Mr. Cooper avers that the cost of a college education does not include ordinary living expenses, fraternity dues, football tickets, insurance, and Ducks Unlimited dinner tickets.

Generally, a marital dissolution agreement between husband and wife dealing with the legal duty of child support or alimony over which the court has continuing statutory power to modify, loses its contractual nature when merged into a divorce decree. See Penland v. Penland, 521 S.W.2d 222 (Tenn. 1975). However, an agreement which imposes an obligation upon a party to pay all future educational expenses of children beyond the high school level, and which necessarily envisions an obligation beyond the age of majority, constitutes "a contractual obligation outside the scope of the legal duty of support during minority, and retain[s] its contractual nature, although incorporated in a final decree of divorce." Penland, at 224-25. Thus, the Property Settlement Agreement in this case must be interpreted as an enforceable contract between the parties. This court has stated that "[t]he interpretation of a written agreement is a matter of law and not of fact. Therefore, our scope of review is de novo on the record with no presumption of correctness of the trial court's conclusions of law." Rainey v. Stansell, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992)

-3-

(citations omitted). Our task is to review the contract anew and make our own independent determination of the agreement's meaning. See Hillsboro Plaza Enterprises v. Moon, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

The interpretation of contracts is governed by several well-established principles. The most important principle in the interpretation of contracts is to ascertain the intention of the parties from a consideration of the entire contract and to give effect to that intention consistent with legal principles. See Rainey, 836 S.W.2d at 118. The words of a contract should be given their usual, natural, and ordinary meaning. See id. at 119. Moreover, "[t]he court, at arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written." Id.

Courts have a duty to give words their ordinary meaning where there is no ambiguity in the contract. See Winfree v. Educators Credit Union, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995). In the absence of fraud or mistake, a contract will be enforced as written even though it contains terms that later appear harsh and unjust. See Allstate Ins. Co. v. Wilson, 856 S.W.2d 706, 708 (Tenn. Ct. App. 1992); Tenn. Code Ann. § 47-50-112 (1995). Additionally, this court has also stated that, "courts do not re-write contracts merely because a party was unwise to agree to a term therein." Carrington v. W.A. Soefker & Son, Inc., 624 S.W.2d 894, 897 (Tenn. Ct. App. 1981). Finally, we note that Mr. Cooper's contractual obligation is subject to an implied condition of reasonableness. See Moore v. Moore, 603 S.W.2d 736, 739 (Tenn. Ct. App. 1980).

In the case *sub judice*, the Property Settlement Agreement plainly states "[t]hat the Husband shall pay for PATRICK'S college or education needed after high school." Mr. Cooper argues that he should only be liable for the fees that Mississippi State University charges in order for one to earn a degree. In essence, Mr. Cooper maintains that he should only be liable for tuition, fees, and books.

The difficulty in this case is that it is not clear what was meant by the term "college" in the language of the Property Settlement Agreement that "[h]usband shall pay for PATRICK'S *college* or education needed after high school." (emphasis added). It appears, therefore, that the ordinary meaning of the term "college" shall control. A contract must be enforced according to the ordinary meaning of its words unless both parties understand and agree at the time of the contract that its meaning is otherwise. See Moore 603 S.W.2d at 739; Hardwick v. American Can Co., 88 S.W. 797 (1905). A term's ordinary meaning is that meaning which would have been derived from its words by reasonable persons dealing in the same situation as that of the contracting parties. See Moore, at 739.

Our task, then, is to determine the ordinary meaning of the term "college." In Cagle v. Cagle, No. 02A01-9701-CH-00265, 1998 WL 802019 (Tenn. Ct. App. Nov. 18, 1998), the parties entered into a marital dissolution agreement providing that the father would pay for "his son's college expenses." The father argued that the parties intended the provision in the MDA to include expenses at a public university, but not expenses at a private college. After first attending Middle Tennessee

State University, a public school, the son transferred to Freed-Hardeman, which is a private college. The trial court ordered the father to pay for the son's expenses at the private school. The court of appeals affirmed, noting that the father had the opportunity to draft the agreement so that he was only liable for college expenses at a public college, but failed to do so.

In Vick v. Vick, No. 02A01-9802-CH-00051, 1999 WL 398115 (Tenn. Ct. App. June 16, 1999), the MDA provided that "[father] agrees to be responsible for the children's tuition, room and board for college education. . . ." The daughter chose to attend Union University, a private school. Father argued that he should only be responsible for the cost of a state university. This court held that the word "college" in the MDA should not be limited to refer to only public universities and found that father was liable for the cost of a college education at a private college.

Other states have also dealt with this issue. In Douglas v. Hammett, 507 S.E.2d 98 (Va. Ct. App. 1998), the marital dissolution agreement provided that the husband would "pay the expenses of a college education for the child." The husband argued that the term college expenses should be limited. On the issue of what is meant by the term "college expenses," the court stated that "it is reasonable to include some amount of ordinary living expenses in determining the normal expenses for a college education. A student could not attend college in a vacuum." Id. at 102. Furthermore, the court stated that if it were to hold that the term college expenses did not include reasonable college related expenses, it would render the parties own language meaningless. See id.

In Reynolds v. Diamond, 605 So.2d 525 (Fla. Dist. Ct. App. 1992), the court was faced with a similar situation. In Reynolds, the marital dissolution agreement provided that "[t]he Husband agrees to pay and be solely responsible for the secular education and training of the children, said education and training to include a college education. . . ." In its well reasoned analysis, the Florida court stated,

> room and board costs can often dwarf the costs of tuition, books, and fees, especially at a state university. When both undergraduate and graduate students apply for student loans, it goes without saying that such monies will be used to subsidize their living expenses. Thus we believe that it is generally recognized that such expenses are factored into the cost of higher education.

Id. at 527. See also 24A AM. JUR. 2D Divorce and Separation § 1035 (1998). Moreover, the court reasoned that "[h]ad husband wished to limit his contribution to tuition and related costs, such language could have been included to make that intention clear." Id.

We find the aforementioned authorities persuasive. As a result, we find that the reasonable meaning of the term "college" in this case includes tuition, fees, books, and room and board. On the issue of room and board, we find that Mr. Cooper should only be responsible for the dormitory costs for room and board charged by Mississippi State University.

Additionally, Mr. Cooper argues that, under the terms of the Property Settlement Agreement, he should not have to pay for extraneous charges such as fraternity dues, parking tickets, and Ducks Unlimited dinner tickets. We note that the case of In re Marriage of Springer, 538 N.W.2d 897 (Iowa Ct. App. 1995) (rev'd on other grounds) is persuasive. The court in Springer dealt with the same issue we have before us; what is included in the term "college expenses?" The Springer court, in discussing what expenses to include, stated that "we have made a reduction for her sorority dues and telephone bills. We believe a child's college expenses should be limited to tuition, room, board, and books." Id. at 901. We agree.

This court has also extended the analysis in such cases as the one before us to a determination of whether the choice of college is reasonable, considering the child's needs and the parents' ability to pay. See Vick, 1999 WL 398115, at *7 (citing In re Marriage of Schmidt, 684 N.E.2d at 1362). These issues were not raised at trial, nor are they raised on appeal. Accordingly, we find that the reasonableness analysis is not pertinent to this appeal, and we decline to address it.

Finally, Mr. Cooper argues that the trial court erred in denying his motion to provide payment for Patrick's college expenses from the testamentary trust established by Patrick's paternal grandmother. The trustee is not a party before this court. Therefore, we are without the power to order any action on the part of the trustee. As a result, we find this issue to be without merit.

In our review of the record in this case, we are unable to determine what expenses were included in the trial court's ruling, as the trial court did not articulate what expenses were included in its final figure of $9,660.00. We agree with Mr. Cooper that extraneous expenses such as fraternity dues, parking tickets, and Ducks Unlimited dinner tickets should not be included. However, we do find that, under the Property Settlement Agreement, Mr. Cooper is liable for the cost of tuition, fees, books, and the dormitory costs for room and board, less grants and scholarships received by Patrick. As a result, we remand this case for further findings of fact consistent with this opinion.

**Conclusion**

Accordingly, for the aforementioned reasons, we hereby affirm this case as modified and remand for further findings of fact consistent with this opinion. Costs on appeal are taxed to the appellant, Porter Hall Cooper, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE